154 So.2d 524 (1963)
Robert J. MAGONI
v.
Germaine Cazenave WELLS, d/b/a Arnaud's Restaurant.
No. 1095.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1963.
Rehearing Denied July 1, 1963.
Lemle & Kelleher, Carl J. Schumacher, Jr., and Albert H. Hanemann, Jr., New Orleans, for defendants and appellants.
Guste, Barnett & Little, William J. Guste, Jr., New Orleans, for plaintiff and appellee.
Before McBRIDE, YARRUT and CHASEZ, JJ.
McBRIDE, Judge.
Plaintiff, a 62-year-old man, weighing more than 200 pounds, fell in a local restaurant while a patron therein, and he brings this suit against the operator thereof and her liability insurer to recover damages *525 for personal injuries, and defendants have appealed from a judgment for $10,596 in favor of plaintiff, rendered after a trial on the merits in the lower court.
Plaintiff was a guest at a noon luncheon held in one of the private dining rooms on the second floor. After a round of martinis and before the food was served, he decided to proceed to the "men's room," which is situated on the mezzanine floor. He walked down a flight of stairs and then through a hall-like passageway 4 feet 3 inches wide and 12 to 15 feet long, the surface of which is elevated 15 or 16 inches above the level of the mezzanine floor. The step down consists of one step which must be negotiated before the mezzanine level is reached, and it is at this point plaintiff experienced his fall. There is no special light or sign to indicate the existence of the step down. The witnesses, and especially plaintiff and his two experts, agree and the trial judge concluded that although subdued, the lighting effects were adequate.
Plaintiff alleges in two articles of his petition that certain defects existed in the "platform" and steps and that "it is difficult to see that there is any step down at all." He advances the conclusion that the accident was caused by the negligence of the operator of the restaurant in failing in several respects to keep her premises in proper condition to serve her patrons. Defendants deny any imperfections in the premises, allege that the accident was caused through the carelessness of plaintiff in certain enumerated respects, and, alternatively plead that plaintiff was guilty of contributory negligence.
Plaintiff does not attribute his fall to the fact there are no handrails in the passageway or that the floor level thereof slopes 1 1/8 inches from one wall to the other or that there is no light or sign warning of the step down, his testimony making it plain that he fell solely because he did not see the step. We quote therefrom:
"Q. Did you see the step at which you fell?
"A. No, sir, I couldn't see it. It looked like one continuous hall. The little hall is only about four feet. It's a continuation of a little platform.

* * * * * *
"Q. Mr. Magoni, I show youwhy did you fall?
"A. The reason I fell is because it looked like it was a continuous hall and I was walking and I just fell.

* * * * * *
"Q. The step was not visible to you?
"A. I didn't see the step.

* * * * * *
"Q. I'll mark that one step with a `S', which I will put a circle and I'll ask Mr. Magoni whether this step was in any way involved in his fall.
"A. I'd say it was, yes.
"Q. Did you step on it?
"A. No.
"Q. Did you trip on it?
"A. I fell off this, right here (indicating).
"Q. You fell off the platform?
"A. The platform.
"Q. You didn't fall off the first step?
"A. No, sir.
"Q. All right.
"A. The step wasn't visible."
Plaintiff introduced as expert witnesses two architects who, in preparation for the trial, inspected the site of the accident. They gave several reasons why the passageway and steps were less than ideal. The thing they did not testify to involved the pivotal point in the case, i.e., what *526 caused plaintiff to fall. They pointed out that the passageway sloped slightly and that the tread width and riser height of the one step where the fall occurred were irregular and that the construction of the step did not conform to the building code presently prevailing in New Orleans. The most pertinent part of the experts' testimony is their statements that the floor design of the passageway and that of the mezzanine floor is of the same pattern and that one could not discern the step down until he had just about come upon it. The trial judge who made visual inspection thereof was of the opinion the premises were defective in that:
"The design of the `tile' linoleum is deceiving to the eye. This because of no change in the pattern.
"The `step-down' is not readily observable. An individual reaches the step before he realizes the danger.
"The Court was impressed with the testimony of Mr. Magoni.
"As one approaches the `step-down' the over-all picture of the area gives an `illusion' of a continuing platform."
We have carefully examined the several photographs introduced as evidence on behalf of plaintiff, and particularly "D-3" which is an excellent view (looking in the direction plaintiff walked) of the passageway, the mezzanine level and a flight of steps on the far side of the mezzanine. Said photographs also show that a small table and a chair stand against the wall on the mezzanine floor. The floor design of both levels is composed of a background of white rubber or linoleum tiles traversed diagonally by rows of colored tiles which were laid in a zigzag pattern. However, notwithstanding the similarity of the design of the floor covering on the two levels, we do not think that the step down was imperceptible and we cannot understand why plaintiff, had he been paying attention, could have failed to observe, while walking down the passageway, that he was approaching a step down which must be negotiated for a descent to the lower level of the mezzanine floor.
Plaintiff testified that he had been in the private dining rooms on the second floor on two or three prior occasions, although he was sure he had never before used the steps where he fell. He claims he was "looking ahead." We take this to mean that he did not cast his eyes downward to the surface on which he walked. Had he done so, surely he would have observed the disparity between the passageway and the mezzanine. But, be that as it may, even if plaintiff had been looking forward as he says he was, it is difficult to understand why he did not notice that the table and chair and the stairs were on a level somewhat below (15 or 16 inches) the surface on which he walked. Exhibit "D-3" clearly depicts these objects, and in our opinion they tended effectively to break any illusion of a continuing level surface. Different floor levels in private and public buildings connected by steps are so common that the possibility of their presence should be anticipated by any reasonably prudent person.
While it may be perfectly true certain aspects of the passageway and step down are such as do not conform with the specifications enumerated in the prevailing building code, it must be borne in mind that the premises involved in this litigation, located in the Vieux Carre, had been in existence long before the advent of the present building code. But even had there been a showing that the premises did not comply with the code in effect at the time of construction, that in itself could not render the defendant liable in damages. In order that there be liability where there is a violation of the code, it must be made to appear that an ensuing accident is attributable to the violation. Gosselin v. Stilwell, La.App., 78 So.2d 235; De Latour v. Roosevelt Hotel, La.App., 1 So.2d 353.
*527 The defendant operator of the restaurant was not charged by law with furnishing perfect or foolproof steps. On the contrary, her duty to the plaintiff was to provide steps which could be negotiated in safety by the exercise of ordinary care by the user. Curet v. Hiern, La.App., 95 So.2d 699; Madere v. Tranchina, La.App., 62 So.2d 871; De Latour v. Roosevelt Hotel, supra.
Recently, in Bradberry v. Dispenza, La. App., 125 So.2d 441, the court said:
"Plaintiff's principal argument on appeal is that the failure to provide a hand rail for the safety of those using the steps constituted negligence. This contention is without merit as the owner of a building is not required to furnish a foolproof step, but only such a step that can be negotiated in safety by the exercise of ordinary care. * * *"
In Knight v. Travelers Ins. Co., La.App., 32 So.2d 508, the court, in dismissing plaintiff's suit for damages, said:
"It is also shown that although 600 customers, on the average, entered the store each day, six days a week, since 1941, only two other accidents occurred at the drop between the two floor levels, both of which were obviously minor accidents, and one of which was admitted by the customer to have been due to her negligence.
"In the light of the above the trial judge concluded thus: `It is therefore my opinion that no negligence can be attributed to the proprietor of the store insured by the defendant.' The trial judge, as a basis for his conclusion, cited and quoted extensively from the cases of Boyle v. Preketes, 1933, 262 Mich. 629, 247 N.W. 763, and Benton v. United Bank Building Co., 1944, 223 N.C. 809, 28 S.E.2d 491.
"In the Boyle case, supra, the factual situation and the contentions therein are nearly identical with the present case. The Court said [262 Mich. 629, 247 N.W. 764]:
"`If defendants' premises were properly lighted, they were not required to post warnings of the steps between the two portions of their place of business. If the place was sufficiently lighted, the steps themselves constituted as effective notice to defendants' customers as it was possible to give.

* * * * * *
"`It has long since been recognized that falling downstairs, where the mishap was not imputed to unknown or concealed defects, belongs to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer." * * *'"
Evidence, unobjected to, introduced by defendants shows that on an average about 100 patrons a day make use of the passageway in going from the second floor to the mezzanine and that over a span of many years no accident has occurred at the point at which plaintiff sustained his fall. A friend of plaintiff's testified that he had been told by one of the waiters in the establishment that other persons had fallen over the same steps. However, the mentioned waiter strenuously denied having made any such statement, and his testimony is that to his knowledge no one had ever fallen there. The fact that multitudes of people have passed over the floors in the establishment over the years without mishap is a circumstance which is by no means conclusive, but it must nevertheless be considered in a favorable light for defendants in determining the question of fact involving the condition of the premises. The testimony leads us to believe that whatever defects, including the alleged illusion, there may have been in the premises played no part in plaintiff's unfortunate accident. See Connella v. Hartford Accident and *528 Indemnity Company, La.App., 119 So.2d 881; Grelle v. Patecek, La.App., 74 So.2d 349; Lawson v. D. H. Holmes Co., Limited, La.App., 200 So. 163; Greeves v. S. H. Kress & Co., La.App., 198 So. 171.
We are aware we are reversing a judgment in a case involving a factual situation. The time-honored rule is that judgments based on findings of fact should not be reversed unless manifest error appears therein and were this a cause where the veracity of witnesses is involved, we would be reluctant to make a reversal. But that is not the case. Here the weight of plaintiff's own evidence is insufficient to warrant a conclusion that his injuries were occasioned by defects in the premises. In our opinion no imperfections existed as would brand the restaurant operator with blame for plaintiff's fall. She was not the insurer of his safety. We simply do not agree with our colleague below.
The judgment appealed from is reversed.
Reversed.