LANDRY, Judge.
This matter is before us on a suspensive appeal taken by defendant Gibson’s of Den-ham Springs, Inc. (Gibson’s) from the judgment of the trial court granting plaintiffs, Mr. and Mrs. Gary Sims, damages for personal injuries and incidental medical expense sustained and incurred because of personal injuries received by Mrs. Sims when she slipped and fell in defendant’s Denham Springs store on April 30, 1965. The trial court awarded Mrs. Sims $4,000.00 and Mr. Sims $1,041.40 for medical expense. On this appeal defendant contends first the trial court erred in awarding any damages whatsoever and, alternatively, the judgment in favor of Mrs. Sims is excessive and should be reduced. Plaintiffs have answered the appeal requesting an increase in the quantum allotted Mrs. Sims and also requesting that the fees of a certain expert who testified at the trial below be fixed by this court. After reviewing the record, we conclude the judgment of the trial court improperly cast appellant in damages because plaintiffs failed to establish their case with that degree of certainty required by law.
In urging affirmation of. the decision reached below, counsel for appellant relies first upon the doctrine of res ipsa loquitur. *826 Alternatively, appellees contend the accident occurred because defendant’s premises were rendered dangerous due to improper waxing of the floor on which Mrs. Sims fell. More precisely, it is contended the improper waxing consisted in application of excess wax which made the floor slippery. The petition also charges defendant with negligence in allowing debris, such as a box and similar material, to accumulate, thus rendering the premises defective and dangerous. No proof whatsoever was adduced in regard to this latter contention and it has been abandoned on appeal.
All parties concede the status of plaintiff was that of an invitee.
It is settled jurisprudence that the owner or occupier of premises is not the insurer of the safety of his invitees. Levert v. Travelers Indemnity Company, La.App., 140 So.2d 811. The duty owed an invitee by an owner or occupier of premises is that of reasonable care which includes the prior discovery of reasonably discoverable conditions of the premises which may be inherently dangerous and the correction of such defects or giving warning to the invitee of the presence of the danger. Hartford Fire Insurance Company v. Illinois Central Railroad, La.App., 140 So.2d 921.
The duty of reasonable care owed by the occupier of premises to his invitees is that of keeping the floors and passageways of his establishment in reasonably safe condition and exercising that degree of care which would be employed by an ordinarily careful and prudent individual under the same or similar circumstances. Benton v. Connecticut Fire Ins. Co., La.App., 145 So.2d 89.
In a “slip and fall” case, plaintiff, as in every civil action, bears the burden of establishing his claim by a preponderance of evidence. Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562.
In substance, appellees’ case is predicated on the contention the floor was dangerously slippery because of an excessive application of wax thereto which condition resulted from inexperience on the part of defendant’s janitor, Henry Ruffin. More particularly, this position is based on the premise the floor had a “high shine” and further that in slipping, Mrs. Sims’ shoes left scuff marks, both of which circumstances indicate excessive waxing. The issue, of course, is purely factual.
Mrs. Sims testified that she had visited defendant’s establishment on two prior occasions. On the day in question she was in the act of returning a pair of boots purchased for her husband on a previous trip. At the time she was attired in slacks, a shirt and was wearing shoes known as “flats”, which footwear was equipped with rubber soles and small leather heels. She went to the refund counter at the rear of the store and upon leaving that department had to make a turn to go around a display rack or counter. As far as she knew both her shoes and the floor were dry. Her shoes were in good condition having been purchased about three weeks prior to the accident. She recalled no foreign matter on the floor and described the floor as being “shiny” but could not say it was slippery. She was carrying a small purse and could only remember that while in the act of making the turn, her feet suddenly went directly forward out from under her and she fell flat on her back. Although she did not recall the presence of scuff marks on the floor, she did remember hearing scuff marks mentioned by some of the persons gathered at the scene following the mishap.
Mr. Sims testified that upon being called and advised of the mishap, he went immediately to defendant’s store arriving there in a matter of two or three minutes. He found his wife lying on her back at the rear of the store. (In this regard it appears that because Mrs. Sims was believed to have sustained a broken back, it was thought best that her removal be accomplished by trained ambulance personnel summoned to her aid). He observed the floor had a high shine and also noted scuff marks approximately 18 *827 inches in length beside Mrs. Sims’ prostrate body.
In addition, plaintiffs produced two acquaintances who were visiting the Sims home when Mr. Sims was called and who accompanied Mr. Sims to defendant’s store. In effect these parties testified the floor looked shiny and slippery and further stated they noticed skid or scuff marks on the floor beside the body of Mrs. Sims. One of said witnesses also stated that upon entering the floor, he slipped near the front door but did not fall to the floor. Both said witnesses recalled bystanders commenting on how shiny and slippery the floor appeared.
Mr. Carroll Hebert, self-employed safety consultant with several years experience, testified on behalf of plaintiffs. He stated his experience showed that most slip and fall cases involving waxed floors occurred because of the presence of excessive wax on the floor. In his opinion an excessively waxed floor generally appeared highly polished and uneven looking. In his judgment the experience of the person applying the wax was a most important factor inasmuch as an inexperienced person is generally disposed to use wax to excess. He further explained that excessive application resulted in a dry top layer of wax with an underlying strata of fluid or liquid beneath, thus causing slips and resulting scuff marks. Mr. Hebert did not examine the floor in question until approximately one year following the accident.
Charles Mobley, manager of defendant’s store at the time of the accident, testified the entire store floor consisted of vinyl tile material. He examined the area where Mrs. Sims fell and found no extraneous matter on the floor. Neither did he see any scuff or skid marks. He also stated he heard no discussion among store employees and onlookers as to the reason for plaintiff’s fall. Nor did he participate in such discourse. Until the time of plaintiff’s fall, Mobley was unaware of any prior similar incident, neither had any complaint reached him regarding the condition of the floor at any place in the store. Prior to the grand opening held March 18, 1965, the floor had been thoroughly waxed with J. J. Smith wax. However, due to trafficking thereon by workmen, the wax powdered off creating a dust problem. Before the opening, the original wax was stripped off and a wax made by E. L. Bruce Company and known as “Bruce Clansman Wax” (Bruce Wax) was applied. While Mobley had not personally instructed the janitor, Ruffin, with regard to applying the wax, such instruction, advice and assistance had been rendered on numerous occasions by Robert Naylor, salesman for the Bruce Company. According to Mobley, Ruffin had worked at defendant’s Baton Rouge store for a few months before being employed at the Den-ham Springs establishment. He further testified that Ruffin was given a schedule which divided the entire store into sections and instructed Ruffin to wax each section at approximately four week intervals.
Henry Ruffin testified he waxed the floor in the Denham Springs store only twice, the last time being just before grand opening day. Since opening, the only areas rewaxed were in the vicinity of the front door and the jewelry counter. He worked from nine o’clock at night until eight o’clock in the morning, on most of which occasions he was alone. He had received explicit instructions in applying the Bruce Wax from Naylor and understood that the wax was to be lightly applied. To apply the wax he used a mop which he dipped into a bucket containing the wax in liquid form. He then squeezed out the excess and put a light coat of wax on the floor. Ruffin stated he received no complaints from Mr. Mobley or anyone else regarding the floors being slippery. He also stated that Mobley had reprimanded him about the floors being dull looking and that he had repeatedly buffed the wax with a buffing machine but that the Bruce Wax would not take a high shine.
Defendant called several former employees who stated in effect there was no foreign matter on the floor where plaintiff fell. *828 They also stated they heard no complaints regarding the floor being slippery and all but one testified they did not observe any scuff marks near the scene of the accident. One such witness, Mrs. Elizabeth Powell, gave what we consider the most likely accurate description of the condition of the floor at that time. In substance she stated there were scuff marks all over the store caused by the coming and going of many customers but none of these marks could be attributed to Mrs. Sims.
Robert Naylor, called on defendant’s behalf, stated he had eight years experience as a chemist in the employ of the manufacturer of Bruce Wax. He gave the components of the wax in question which included 10% by volume of a chemical known as collodial silicate, an anti-slip additive. In essence he stated the wax was such that its application to a floor would render the surface no more hazardous or slicker than the original un-waxed finish. He further stated he gave Ruffin express instructions as to the mode of application being careful to stress the desirability of a light wax coating.
Cecil Shilstone, President of Shilstone Testing Laboratories, called on defendant’s behalf, testified regarding the anti-slip coefficient of Bruce Wax. He explained that the anti-slip factor was a measure of the relative slipperiness of a surface under certain testing conditions utilized by the National Bureau of Standards in Washington, D. C. (Bureau). Mr. Shilstone found, according to tests made, that the anti-slip characteristics of Bruce Wax rated “good”, which is the highest classification assigned by the Bureau under the test conditions employed. The witness further stated that in slip down situations there are a number of other important factors which must be taken into consideration besides the surface of the floor or area where the accident occurs. He pointed out that according to recognized authority, namely, the National Academy of Sciences, National Research Council, the three most vital factors involved in a fall are surface condition, pedestrian and the nature of the footwear worn at the time. In summarizing the relative importance of these factors in considering the causes of a fall, he explained that the same surface'may not be as hazardous to one person as to another and may not be as perilous to the same individual under different circumstances of usage. In this connection he pointed out that body weight, speed and direction of travel, type of footwear worn at the time and the angle at which the foot strikes the surface on any given step, can all create varying degrees of danger even as to the same person.
Counsel for appellant attacks the testimony of Mr. Shilstone on the ground that publications equally as authoritative as those of the Bureau and on which Shilstone relies, indicate laboratory tests to determine the anti-slip characteristics of waxes are of little value inasmuch as they do not demonstrate field conditions which involve the extra factors testified to by Shilstone. On this premise it is contended Shilstone’s testimony regarding the anti-slip qualities of the wax in question is of little or no probative value.
With the foregoing contention of plaintiff we are inclined to agree. This' conclusion, however, does not alter the outcome of this matter. It was not incumbent upon defendant to disprove the allegation the floor was dangerously slippery. Nothing in the record supports plaintiffs’ argument that a highly polished floor is indicative of a slippery floor. Although plaintiff’s witness, Hebert, so testified he was of that opinion, he could not, upon cross-examination, cite any authority for such position other than he believed that to be true from his own personal experience. Likewise, Hebert’s opinion that scuff marks are evidence of excessive waxing is not supported by any authority other than his expression of the view he believes such to be true.
Having minutely reviewed the evidence, we.come to the conclusion the testimony preponderately favors defendant’s *829 contention that the floor was not slippery to such degree as to make it dangerous. Counsel makes much of the point that the janitor, Ruffin, is shown to be inexperienced. Conceding this issue, arguendo, it is a matter of no moment unless the floor was in fact waxed to excess thus causing plaintiff’s fall. Nothing in the record justifies the conclusion Ruffin was in any wise at fault. On the contrary, the weight of the testimony indicates the floor was safe.
The mere fact that a licensee slips on a shopkeeper’s premises does not ipso facto create an inference of negligence. Neither does it, standing alone, give rise to application of the doctrine of res ipsa loquitur. Gauthier v. Liberty Mutual Insurance Company, La.App., 179 So.2d 437. The doctrine of res ipsa loquitur is a rule of evidence to be applied at the end of the trial after all evidence is adduced. Day v. National United States Radiator Corporation, 241 La. 288, 128 So.2d 660.
When applicable, the doctrine of res ipsa loquitur gives rise to an inference of negligence on defendant’s part because the facts indicate negligence to be the more probable cause of the injury absent other explanation of cause by credible witnesses. Pilie v. National Food Stores of Louisiana, 245 La. 276, 158 So.2d 162. In cases of this character, the Supreme Court has decreed the doctrine applicable when the facts as a whole suggest negligence on defendant’s part rather than some other factor as the most plausible explanation of the accident. Pilie v. National Food Stores of Louisiana, supra. The rule is inapplicable, however, when the inference that the accident resulted from a cause other than defendant’s negligence can be drawn as reasonably as the inference that the mishap did occur because of defendant’s fault.
The record before us establishes only the fact that plaintiff experienced a fall. The mere occurrence of an accident is insufficient to make out a case against defendant either under the general tort law which requires proof by plaintiff of defendant’s negligence or pursuant to the doctrine of res ipsa loquitur which calls for a showing of circumstances which suggest that defendant’s negligence, rather than some other factor or factors, is the most plausible reason for the occurrence of the mishap. Nothing in the record at hand justifies the inference that the negligence of defendant is the most plausible cause of or explanation for the happening of the accident. We conclude therefore the doctrine of res ipsa lo-quitur is inapplicable to the case at bar.
The trial court declined to qualify Mr. Carroll A. Hebert as an expert witness notwithstanding the record contains ample evidence of his entitlement to such recognition in the field of safety engineering. In compliance with appellees’ request we declare the witness so qualified and assess his fee in the sum of $100.00 and tax same as costs together with all other costs incurred.
For the reasons hereinabove assigned, it is ordered, adjudged and decreed the judgment of the trial court in favor of plaintiffs Gary Sims and Evelyn Sims and against defendant Gibson’s of Denham Springs, Inc., be and the same is annulled, reversed and set aside and judgment rendered herein in favor of defendant Gibson’s of Denham Springs, Inc. and against plaintiffs Gary Sims and Evelyn Sims, dismissing and rejecting said plaintiff’s claims with prejudice; all costs of these proceedings in both the trial court and on appeal to be paid by plaintiffs Gary Sims and Evelyn Sims.
Reversed and rendered.