395 So.2d 846 (1981)
Eula Simon JONES et al.
v.
RECREATION AND PARK COMMISSION OF the PARISH OF EAST BATON ROUGE et al.
No. 13898.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
Rehearing Denied March 31, 1981.
*847 Patricia R. Smith, Baker, counsel for defendant-appellant, Recreation & Park Commission of the Parish of East Baton Rouge.
Richard E. Burton, Baton Rouge, counsel for plaintiffs-appellees, Eula Simon Jones and Carl Jones.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The issue presented in this slip and fall case is whether or not appellant's floor was unreasonably dangerous for its intended purpose. Because we agree with the trial court's determination the floor was unreasonably dangerous, we affirm.
On October 23, 1977, Mrs. Eula Jones went to Webb Park golf course to play golf with a friend. (Webb Park is located in Baton Rouge and is owned by the Recreation and Park Commission, herein referred to as "BREC.") Dressed in her steel-spiked golf shoes, she entered the "club house" in order to pay the green fee and the golf cart rental fee. After paying the fees she proceeded to cross the floor of the "pro shop," entered the "lounge" and walked toward the ladies' locker room. When she was several feet from the door of the ladies' room she slipped and fell on the concrete floor. She broke her right leg[1] as a result of the fall.
Testimony by various witnesses at trial indicated the entire floor of the Webb Park club house is made of concrete. Golfers must enter the building to pay the golf cart rental fees, the green fees, and to use the restrooms. H. J. Neese, the golf pro employed at the time of the accident, testified 99% of the golfers who play at Webb Park enter the building wearing their golf shoes. Another employee, Donald Harquist, testified he had slipped on the concrete floor, although he did not fall. Several employees of BREC testified they were unaware of any falls, other than Mrs. Jones, occurring at Webb Park. Employee, Irene Yessick, admitted it was necessary to be careful when walking on the concrete floors of the club house.
Catherine O'Neal, another golfing patron, testified she too had fallen at Webb Park while wearing golf shoes. Some ten years before Mrs. Jones' accident, Mrs. O'Neal fell while inside the ladies' locker room where the floor is also concrete. She testified various complaints were made to the management concerning the slippery floors. Rubber mats were subsequently installed inside the locker room.
An expert witness testified for both parties. Appellees' expert was Mr. Stanley Day, a safety inspector with 39 years experience. He testified the kinetic coefficient of friction in the area where Mrs. Jones fell was .16. His tests showed the areas away from the ladies' locker room, toward the pro shop, were less slippery, with a coefficient of .30. He stated he believed the condition of the floor to be hazardous and recommended carpeting or rubber mats be installed to alleviate the situation.
Appellant's expert witness was Dr. Dale Carver, professor of Civil Engineering at L.S.U. Dr. Carver disputed Mr. Day's technique of using the kinetic coefficient of friction and stated the only applicable standard was the static coefficient of friction. Dr. Carver's tests showed the floor in the area of the accident to be less slippery than Mr. Day had determined, finding a static coefficient of friction of .25. He, too, found the floor in the pro shop to be less slippery than the floor near the locker room, finding the pro shop area to have a coefficient of .35. He stated the floor was not unreasonably dangerous but was simply a typical concrete floor.
*848 The trial judge noted during presentation of the evidence he was not deciding the case based on statistics. We agree with the court's comment and find the expert testimony to be of very limited use in that neither expert adequately explained the practical meaning of the coefficients of friction. Although there was much discussion about the difference between the static and the kinetic coefficients of friction, neither witness offered information as to what coefficient represented an unreasonably dangerous floor. Without more explanation, the bare statistics do not shed much light on the issue of the condition of the floor.
The owner of a business establishment must keep floors and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. Raines v. Travellers Insurance Company, 254 So.2d 659 (La.App. 4th Cir. 1971), writ granted, 1972, case dismissed 281 So.2d 694 (La.1972); Sims v. Gibson's of Denham Springs, Inc., 205 So.2d 824 (La. App. 1st Cir. 1967). The record indicates the sole purpose of the club house at Webb Park is to serve golfers. We agree with the trial court's comment that it is unreasonable to require golfers to remove their shoes every time they enter the building. The proprietor, BREC, had a duty to see the floors were reasonably safe for golfers wearing spiked shoes. As the proprietor, BREC owed the duty of reasonable and ordinary care which includes the prior discovery of unreasonably dangerous conditions of the premises and a warning or correction thereof. Koder v. Phoenix Insurance Co., 241 So.2d 257 (La.App. 1st Cir. 1970).
Because the evidence indicates the floor was unusually slippery, especially in the area near the ladies' locker room, we conclude BREC breached its duty to maintain the floor in a reasonably safe condition for its intended use. The testimony indicates a general awareness by BREC employees of the slippery condition. The problem could have been rectified easily by installation of rubber mats or carpeting. At the very least, warning signs should have been placed to alert patrons to particularly slick areas.
Many of the BREC employees called as witnesses at trial testified there had been no other accidents caused by the condition of the floor. Although this may be considered in a favorable light for defendants in determining the question of the condition of the premises, it is by no means conclusive. Magoni v. Wells, 154 So.2d 524 (La. App. 4th Cir. 1963). The testimony as a whole indicates most people realized the floor was slippery and proceeded to walk with caution. Mrs. Jones herself testified she was well aware of the hazards of walking in spiked shoes on the concrete floor and always took care when doing so.
Appellant also assigns as error the trial court's failure to find contributory negligence on the part of Mrs. Jones. The trial judge correctly disposed of this contention and we adopt his reasons which we quote, as follows:
"... BREC contends that the plaintiff was not careful and was in a hurry thereby causing her own injury. There were no eye witnesses, but the Court is satisfied that there is no evidence which would indicate Mrs. Jones was running or rushing toward the restroom. Through its pleadings and elicitation of testimony, BREC showed that Mrs. Jones had visited the premises many times and was very familiar with the condition of the floors and the necessity of exercising care while walking thereon. The suggestion is therefore made that the fact many others had traversed the same path without accident would indicate negligence on her part. The Court does not agree. The appellate courts have repeatedly held that the absence of other earlier accidents does not reflect contributory negligence on the part of injured plaintiffs. Magoni v. Wells, 154 So.2d 524 (La.App. 4th Cir. 1963). But, of more significance in this matter is that anyone using the restroom facilities would be required to remove their golf shoes before going into the building. The Court finds that the inconvenience *849 of removing golf shoes on each and every instance of entry and exit from the building is an unreasonable requirement and, consequently, in the absence of activity on the part of the plaintiff which plainly could be calculated to bring about his or her own injury, contributory negligence under the circumstances is not well founded."
No error was raised as to the $15,000.00 awarded for pain and suffering. Appellant contends the trial court erred in allowing damages for lost wages for a period in which Mrs. Jones should have returned to work. Testimony at trial showed Mrs. Jones was injured on October 23, 1977. She was hospitalized for approximately five weeks after the accident. The long cast was replaced with a short cast which remained on her leg for approximately three more months. Mrs. Jones testified she was in great pain and virtually immobile until the long cast was removed. She attended physical therapy sessions but had some difficulty arranging transportation. She had great trouble walking with the short cast and complained of pain in her foot and ankle as of the date of trial (January 1980). She returned to work in August 1978, nine months after the accident or about six months after the cast was removed.
Considering Mrs. Jones' age at the time of the accident (62), we find no manifest error in the trial court's conclusion she was unable to work until August of 1978. Dr. Francis McMains, the orthopedic surgeon who attended Mrs. Jones, testified he would generally have thought she would have returned to work sooner, but considering her low threshold of pain and her age, her recovery was about what he would have expected. He stressed a broken tibia fracture was extremely painful and recovery varied a great deal from individual to individual.
Appellant argues the trial court erred in not assigning a dollar amount to the court costs owed by appellant. We agree La.R.S. 13:5112 requires the trial court to express the costs in a dollar amount but feel this error was harmless. We therefore amend the provisions of the judgment as they relate to court costs to read in their entirety, as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Recreation & Park Commission of the Parish of East Baton Rouge, be condemned to pay court costs in the amount of $1,304.19, this sum representing: clerk's costs, $266.27; sheriff's costs, $70.40; expert witness fees, $500.00; lay witness expenses, $65.92; and stenographer's fee, $401.60."
In all other respects the judgment of the trial court is affirmed.
For the foregoing reasons, the judgment of the trial court is amended in part and affirmed in part. Costs on appeal, in the amount of $25.00, are assessed against appellant.
AMENDED IN PART AND AFFIRMED.
NOTES
[1] The lower leg consists of two bones: the fibula, which is the outer, smaller bone, and the tibia, which is the inner, larger bone. Both bones were fractured as a result of the fall.