426 So.2d 681 (1982)
Buna G. KINCHEN
v.
J.C. PENNEY COMPANY, INC., et al.
No. 82 CA 0298.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.
*682 John deGravelles, Baton Rouge, for plaintiff-appellee.
Bruce J. Borrello, Metairie, for defendant-appellant.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
This personal injury suit involves a slip and fall accident which occurred in the J.C. Penney store in Hammond, Louisiana. The trial court rendered a judgment in favor of plaintiff, and defendants Penney and its insurer have taken a suspensive appeal. We reverse.
The determining issue is whether or not the plaintiff proved by a preponderance of the evidence the existence of a premises hazard which was responsible for plaintiff's fall.
On December 13, 1979, plaintiff went to the J.C. Penney store at Hammond Square shopping center to pick up a package. It had been raining off and on all day, and it was still misting, according to the plaintiff, when she parked her car a few feet away from Penney's main entrance. This entrance was covered, and mats were apparently placed both inside and outside of Penney's door. The plaintiff, a 49 year old woman, allegedly walked at a normal gait through the main entrance, wiped her feet on the inside mat, and took two or three steps past the mat before both of her feet slipped out from underneath her, causing her to fall hard on her back.
Mr. and Mrs. Joseph Booth were using a telephone near the entrance to Penney's when plaintiff fell and they observed the accident. The Booths, who testified for the defendants, corroborated plaintiff's testimony as to how the accident happened, including the fact that plaintiff was walking at a normal gait when she fell and that she had wiped her feet on the inside mat. However, both the Booths testified they saw nothing which would have caused plaintiff's fall. They both observed the area in which plaintiff fell and both testified the floor was dry and it contained no debris or foreign substances of any kind. Mrs. Booth also testified the area outside the door under the covered main entrance was dry. Furthermore, the plaintiff also admitted she saw no puddles of water or any foreign substance on the floor which could have caused her fall. Mr. Robert Rosson and Mrs. Mamie Statham, Penney's general manager and personnel supervisor, respectively, both arrived at the scene of the accident while plaintiff was still on the floor. They also inspected the area and found no wet spots or foreign debris or any skid marks from plaintiff's fall.
After she fell, Mr. Booth immediately came to plaintiff's aid. Plaintiff was complaining of neck pain, so Mr. Booth, a police detective, urged her to remain lying on the floor. Plaintiff testified the slippery condition of the floor prevented her from getting back to her feet, so she remained on the floor until the ambulance came about twenty minutes later. Booth stated he tried to determine why plaintiff fell and while she was on the floor he noticed her shoes, black nursing oxfords with a low wedge heel and rubber soles, and found the soles to be somewhat wet. He commented her shoes "were the kind of sole that reminded me of shoes I've had in the past, when they're wet, they're very slippery." When the ambulance arrived and plaintiff was removed from the floor, Mr. Rosson felt the floor under where the plaintiff had been and found it to be free from debris or wet spots.
The owner of a business establishment must keep floors and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. Jones v. Recreation and Park Commission, Etc., 395 So.2d 846 (La.App. 1st Cir.1981). Since the owner of a business establishment is not the insurer of the safety of his customers, a breach of this duty must be shown before the storekeeper will be held liable for slip and fall injuries suffered on the premises. Martel v. Southern *683 Farm Bur. Cas. Ins. Co., 368 So.2d 1192 (La.App. 3d Cir.1979).
Although no presumption of fault on the part of a storekeeper arises simply because a customer is injured on the premises, such a presumption does arise when the customer can prove his injury resulted from a "premise hazard," and the burden of proof then shifts to the storekeeper to prove freedom from fault. Johnson v. Ins. Co. of North America, 360 So.2d 818 (La. 1978); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Kavlich v. Kramer, 315 So.2d 282 (La.1975). A premise hazard was defined by the Johnson court to be a "condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances." In the context of slip and fall cases, a premise hazard is shown when the fall results from a foreign substance on the floor (see, Gonzales and Kavlich, supra) or from an otherwise unreasonably slippery condition (see, Jones, supra).
The trial court held the plaintiff had proved adequately the existence of a premise hazard. It believed plaintiff's fall must have resulted from the presence of water inside the store because of the testimony that plaintiff's shoes were wet after she had wiped her feet on the mat inside the store. It also believed the floor was unreasonably slippery due to the manner in which both of plaintiff's feet slipped out from under her. This finding was supported by testimony of the plaintiff's daughter-in-law who came back to Penney's for the package the plaintiff had gone to pick up. She testified the spot where the plaintiff fell was very slippery because it was highly polished.
We find the plaintiff failed to prove adequately the existence of a premise hazard. The fact plaintiff's shoes were still wet after her fall does not prove her fall resulted from the presence of water inside the store. Rather, it is more likely, in view of the extensive testimony that the floor was dry where plaintiff fell, that plaintiff's shoes were wet from water she stepped in outside the store. The fact that plaintiff wiped her feet before entering the store does not lessen this probability, especially since there is no duty to provide mats which remove all moisture from one's wet shoes.
In a similar case, Miller v. Montgomery Ward and Company, Inc., 317 So.2d 278 (La.App. 1st Cir.1975), the plaintiff stepped off a carpet onto a tile floor and slipped and fell. None of the witnesses or store personnel had observed a foreign substance on the floor immediately before or after the accident. In holding the plaintiff had failed to carry her burden of proof, the court found this was "simply an unexplained and unfortunate accident through no fault of the defendant storekeeper or its employees."
Likewise, in Boswell v. Louisiana Dept. of Public Welfare, 345 So.2d 200 (La.App. 3d Cir.1977), the plaintiff contended she slipped and fell on a liquid foreign substance on the floor of defendant's hallway. She admitted she did not see any water or other liquid on the floor, either before or after she fell. However, unlike the present case, there was some testimony that plaintiff's clothes were wet after her fall. The plaintiff reasoned since she fell near a water fountain and a Coke machine, she must have slipped and fell on some water or Coke which had spilled. However, all the witnesses to the fall testified the floor was not wet. The court held the defendant could not be liable for negligence in failing to discover and remove an alleged hazardous liquid or foreign substance from the floor in the absence of sufficient proof that there was anything on the floor at the time of the fall. See Stillwell v. Winn-Dixie Hill, Inc., 146 So.2d 707 (La.App. 1st Cir. 1962).
Nor do we believe sufficient evidence was introduced to prove the tile floor was unreasonably slippery due to its polished condition. The mere fact that a floor has a "high shine" is not sufficient to establish liability on the part of the storekeeper. See Sims v. Gibson's of Denham Springs, Inc., 205 So.2d 824 (La.App. 1st Cir.1967). The plaintiff must prove the floor is in fact unreasonably slippery, perhaps as a result of an excessive or uneven application of wax or from the application of an improper *684 wax. See Sims, supra; West v. U.S. Fidelity & Guaranty Co., 405 So.2d 877 (La.App. 4th Cir.1981); Miller v. Smith, 391 So.2d 1263 (La.App. 1st Cir.1980), affirmed, 402 So.2d 688 (La.1981); Boynes v. Gulf Janitorial Services, Inc., 175 So.2d 1 (La.App. 4th Cir.1965).
The only direct testimony produced concerning the slipperiness of the floor was that of the plaintiff and her daughter-inlaw. Though plaintiff contends the slippery state of the floor prevented her from getting up after the fall, other testimony tended to show plaintiff's severe pain and requests from Mr. Booth to remain still until the ambulance arrived are what thwarted her attempts to get off the floor. Likewise, the testimony of plaintiff's daughter-in-law shows she believed the floor was slippery simply because it looked shiny, though she stated she walked on the floor and found it to be "slippery like it had acrylic on it." However, the accident occurred on Friday and the floor had not been waxed since the previous Monday, according to Mr. Rosson.
The opinion of plaintiff's expert that the floor was unreasonably slippery was unconvincing. This opinion was based on the expert's belief that all tile floors are unreasonably dangerous, especially when any type of wax is applied. This expert examined the premises about one and one-half years after the accident and performed a "coefficient of friction" test with shoes similar to those worn by plaintiff at the time of the accident. A coefficient of .8 was obtained by using a dry shoe; a coefficient of .6 was obtained with a wet shoe. Both these figures exceeded the minimum standard of .5 established by Underwriters Laboratory. However, this standard was predicated upon a test performed with leather shoes. The expert contended the floor would have failed the test if leather shoes were used, though no figures were given to substantiate this contention. We therefore find his testimony unconvincing, especially since the test was not performed under the conditions from which the industry standard was developed.
The only thing which the record clearly establishes is the unfortunate fact of plaintiff's fall. The fact of the fall alone does not establish the floor was so slippery as to make it unreasonably dangerous. We conclude the plaintiff has not adequately proved the existence of a premise hazard; rather, we find the unfortunate accident most likely resulted from adverse weather conditions beyond the control of defendant. In Edwards v. Piggly Wiggly Operators, 401 So.2d 493, 495 (La.App. 2d Cir.1981), the court stated:
"We recognize, of course, that to require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safetywhich is not required."
Finally, having concluded the floor has not been shown to be unreasonably dangerous, it cannot be said to be defective for purposes of imposing strict liability under La.Civ.Code art. 2317. See Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir.1982).
For the above reasons, the judgment of the trial court is reversed. Costs are assessed against plaintiff.
REVERSED.