Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,684-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANNIE SISK                                    Plaintiff-Appellant

versus

LOUISIANA DISCOUNT                            Defendant-Appellee
TOBACCO, INC.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20190765

Honorable Clarence Wendell Manning, Judge

* * * * *

STREET & STREET                               Counsel for Appellant
By: Curtis Daniel Street


PETTIETTE, ARMAND, DUNKELMAN                  Counsel for Appellee
By: Stephan Michael Cooper
    E. Henry Byrd, IV.
    Christopher Graydon Forester


* * * * *

Before STONE, COX, and BODDIE *(Pro Tempore)*, JJ.

**BODDIE** *(Pro Tempore)*, **J.**

In this slip-and-fall case, Annie Sisk appeals a judgment granting the defendant's motion for summary judgment and dismissing her lawsuit. Concluding that the motion for summary judgment was properly granted, we affirm the judgment.

### FACTS

On January 3, 2019, Annie Sisk went to a Bayou Butts and Booze store in Monroe, Louisiana, in order to pay a utility bill. Upon entering the store, Sisk slipped and fell on the concrete floor. She allegedly sustained injuries during the fall. Sisk filed suit against Louisiana Discount Tobacco, Inc. d/b/a Bayou Butts and Booze ("LDT"). She alleged that it had been raining before her arrival at the store, the floor was wet, and there was no rug or wet floor sign warning patrons about the slick floor.

LDT filed a motion for summary judgment in which it asserted that Sisk cannot prove the existence of an unreasonably dangerous condition or that LDT had actual or constructive notice of any such condition. LDT maintained that no unreasonably dangerous condition existed because the floor was dry and it was only Sisk's boots which were wet. Furthermore, any water that was present had drained from Sisk's own footwear. Thus, LDT would not have had actual or constructive notice of the presence of any unreasonably dangerous condition.

In support of its motion, LDT submitted Sisk's petition and excerpts from her deposition. Sisk testified at her deposition that both feet slipped after she took three steps into the store. She claimed that neither a floor mat nor a wet floor sign was inside the door. Despite the allegation in her petition that the store's floor was wet, she testified that the floor was dry but

became wet from her boots. The day of her fall was the first time that Sisk had worn the leather-soled boots, which were hand-me-downs. Sisk added that she had not worn the boots since she fell because she did not want something like that to happen again. A photo of the boots was attached to her affidavit. Sisk also testified that a mat had been on the floor when she visited the store on prior occasions, but the mat was not there on the day that she fell.

Sisk argued in opposition to the motion that whether or not there was a mat at the store entrance was a genuine issue of material fact precluding summary judgment. She additionally argued that the mere fact the floor was dry did not exonerate LDT from fault because a mat at a store entrance is necessary to ensure the entrance is safe when it is raining. The mat serves the purpose of allowing customers to wipe their shoes in order to prevent someone from slipping on water brought in on shoes.

In opposition to the motion for summary judgment, Sisk submitted the deposition of Mandy Ratcliff, an employee of LDT, and an excerpt from her own deposition. Ratcliff had worked at the store in question as a manager. On the day of Sisk's fall, Ratcliff was smoking outside the store when Sisk arrived. Ratcliff believed that Sisk was the first customer that day. Ratcliff extinguished her cigarette, walked inside, wiped her feet, and then waited at the counter for Sisk to enter. When Sisk stepped onto the concrete floor, her feet slipped out in front of her.

Ratcliff denied telling another employee to get a rug and a wet floor sign after Sisk had fallen. She recalled that it was raining that day, and they had a rug at the door at the time. A wet floor sign was also being used. Ratcliff testified that the wet floor sign was always in the same area, and it

2

was used "pretty much" all the time whether the floor was wet or not. Ratcliff explained that the concrete floor was prone to having wet spots from spills, so they left the sign out as a precaution. Photos of the store interior taken possibly a week after Sisk's fall were attached to her deposition.

The trial court granted LDT's motion for summary judgment upon finding there was no genuine issue of material fact that Sisk was unable to establish there was a condition presenting an unreasonable risk of harm and the risk of harm was foreseeable. Sisk has appealed.

## DISCUSSION

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of

3

material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

To reverse the trial court's decision, this court would have to find on *de novo* review that the record reveals a genuine issue of material fact which precludes summary judgment as a matter of law. *White v. Louisiana Dep't of Transp. & Dev.*, 18-741 (La. App. 3 Cir. 3/13/19), 269 So. 3d 1031, *writ denied*, 19-0572 (La. 5/28/19), 273 So. 3d 311. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874.

The burden of proof for a claimant in a slip-and-fall lawsuit against a merchant is set forth in La. R.S. 9:2800.6, which provides, in part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the

4

vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

Plaintiffs who slip and fall in a merchant's premises bear a heavy burden of proof. Failure by a plaintiff to prove any of the three required elements in La. R.S. 9:2800.6(B) is fatal to the plaintiff's case. *Gregory v. Brookshire Grocery Co.*, 45,070 (La. App. 2 Cir. 4/21/10), 35 So. 3d 458; *McDonald v. PNK (Bossier City), LLC*, 53,561 (La. App. 2 Cir. 9/23/20), 304 So. 3d 143.

There is no dispute that the concrete floor was dry when Sisk stepped into the store. What is in dispute is whether or not there was a mat or rug at the door. Sisk contends that the inquiry into LDT's liability does not end merely because the floor was dry. She asserts that merchants have a duty to provide a floor mat at the door for customers on rainy days. Customers use the mats to wipe water from the bottom of their footwear. Floor mats also soak up water tracked in by customers. Thus, the lack of a mat or rug on the concrete floor presented an unreasonably dangerous condition to Sisk, and the dispute over the presence of a floor mat involves a genuine issue of material fact.

LDT counters that whether or not a floor mat was present goes to the question of whether a merchant exercised reasonable care to address an already-existing unreasonably dangerous condition. The absence of a mat does not create an unreasonably dangerous condition when the floor is dry. LDT argues that the dry floor was not an unreasonably dangerous condition. LDT further argues that because Sisk slipped due to water on her own shoes,

5

it did not have actual or constructive notice of any alleged unreasonably dangerous condition.

In support of her argument, Sisk cites *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149. The defendant business was found partially liable for injuries caused to Flipping, who slipped and fell immediately when she entered an office building on a rainy day. The trial court concluded that the defendant should have had a larger mat on the inside of the door and ensured the mat remained against the door threshold. Affirming the judgment, this court concluded that the defendant was under a duty to have rainy-day safety measures that were prudent and reasonable at its customer entrance. The defendant's failure to maintain a mat for a customer stepping up and onto a damp floor was a breach of its duty under those circumstances.

*Flipping* is easily distinguished from the matter before us. As Flipping entered the building, her first step was on the metal threshold. Her next step was on a wet and slippery spot of a tile floor. In contrast, Sisk stepped on dry concrete. Another case relied on by Sisk, *Kadlec v. Louisiana Tech University*, 50,841 (La. App. 2 Cir. 11/16/16), 208 So. 3d 992, *writ denied*, 17-0062 (La. 3/24/17), 216 So. 3d 815, is also easily distinguished. We note that the defendants in *Flipping* and *Kadlec* were not merchants. Thus, they were not subject to the express duties for merchants that are set forth in La. R.S. 9:2800.6.[1]

---

[1] *Flipping* states that the duty owed by a non-merchant business owner to visitors is less than the duty owed by a merchant under La. R.S. 9:2800.6. *Kadlec* refers to the merchant duty as the highest duty.

In *Kadlec*, a parent slipped and fell after entering a dormitory lobby while helping her son move in on a rainy day. Kadlec fell four steps past an outdoor floor mat. No floor mat was inside the lobby. This court reversed the summary judgment that had been granted in the defendant's favor. Unlike Sisk, the plaintiff in *Kadlec* alleged that she slipped on a wet floor. This court in *Kadlec* recognized that the amount of water on the floor was not clearly shown and remained in dispute.

Sisk also relies on *Smith v. Southwest Louisiana Hosp. Ass'n*, 15-502 (La. App. 3 Cir. 11/4/15), 178 So. 3d 308, where a hospital was found liable for a patient's injuries after he slipped on a terrazzo floor as he walked into the hospital entrance on a rainy morning. There was a large embedded rug at another entrance to the hospital, but not at the entrance the plaintiff used. An expert witness opined that the plaintiff slipped because the terrazzo floor lacked anti-slip material and was unsafe during wet weather conditions. Again, in the matter before us, the concrete floor was dry, and there was no evidence that it was slippery before Sisk, apparently the first customer of the day, stepped into the store.

In support of their argument that a dry floor did not present an unreasonably dangerous condition, LDT cites *Kinchen v. J.C. Penney Co., Inc.*, 426 So. 2d 681 (La. App. 1 Cir. 1982), *writ denied*, 431 So. 2d 774 (La. 1983), a case which predated the enactment of La. R.S. 9:2800.6. In *Kinchen*, the plaintiff entered the store on a rainy day, wiped her feet on an inside mat, and then took a few steps past the mat before her feet slipped out from under her. Two witnesses testified the floor was dry and free of any debris or foreign substance. One of the witnesses noted that the soles of the plaintiff's shoes were somewhat wet. The plaintiff admitted that she did not

see any puddles of water or foreign substance on the floor. A store manager inspected the area and did not see any wet spots or foreign debris. The trial court found the plaintiff had proved the existence of a premise hazard because the court believed the fall must have resulted from the presence of water in the store and because the floor was unreasonably slippery. Reversing the judgment in favor of the plaintiff, the appellate court stated:

> We find the plaintiff failed to prove adequately the existence of a premise hazard. The fact plaintiff's shoes were still wet after her fall does not prove her fall resulted from the presence of water inside the store. Rather, it is more likely, in view of the extensive testimony that the floor was dry where plaintiff fell, that plaintiff's shoes were wet from water she stepped in outside the store. The fact that plaintiff wiped her feet before entering the store does not lessen this probability, especially since there is no duty to provide mats which remove all moisture from one's wet shoes.

*Kinchen*, 426 So. 2d at 683.

Sisk did not present factual support sufficient to establish a genuine issue of material fact regarding whether there was a condition in the store presenting an unreasonable risk of harm to her. The dry concrete floor was not unreasonably dangerous even assuming that a floor mat was not at the store entrance. Sisk also failed to present factual support sufficient to establish a genuine issue of material fact concerning the notice element in La. R.S. 9:2800.6.

In *Boeshans v. Petsmart, Inc.*, 06-606 (La. App. 5 Cir. 1/16/07), 951 So. 2d 414, the plaintiff slipped and fell just after entering the pet store on a rainy day. She claimed that her daughter's dog bolted to the store's door, stopped momentarily to urinate, then continued into the store as she followed it. She did not recall seeing a mat on the floor that day. The

plaintiff believed rainwater or urine caused her to fall. However, she did not see either substance on the floor.

The store's manager witnessed the fall. He stated that the plaintiff, who was being forcefully pulled by the dog when she entered the store, was tripped by the dog after the plaintiff stepped off a mat inside the store. The manager explained that while the store had no particular policies for rainy day conditions, there was a rubber mat at the door that day. He also stated that the floor was not wet when the plaintiff entered the store, but, after the incident, it was wet where she had fallen.

Petsmart filed a motion for summary judgment in which it argued that the plaintiff failed to show it had constructive notice of a dangerous condition. The plaintiff argued against the motion that the lack of a specific policy addressing wet floor conditions on rainy days precluded summary judgment. The motion was granted. Affirming the lower court, the appellate court found that the plaintiff failed to meet her burden of proving that Petsmart had actual or constructive notice that the floor was wet prior to her falling. The plaintiff admitted that she saw nothing on the floor, and the store manager testified the floor was not wet before she fell. The appellate court also noted that the lack of a specific plan to warn customers of a wet floor was irrelevant when there was no evidence that Petsmart had any notice of liquid on the floor before the plaintiff fell.

In *Oliva v. Winn Dixie Louisiana, Inc.*, 99-831 (La. App. 5 Cir. 1/4/00), 756 So. 2d 444, *writ denied*, 00-0370 (La. 3/31/00), 759 So. 2d 71, the appellate court noted that the defendant had evidence that the plaintiff slipped in water draining from her own shoes. The court concluded, "[t]hat evidence negate[d] the statutory requirement" that plaintiff show the

9

merchant created or had actual or constructive notice of the allegedly dangerous condition prior to the occurrence. *Id.*, 99-831 at p. 9, 756 So. 2d at 449.

Sisk brought water into the store on the boots she was wearing. Even assuming the water on her boots presented an unreasonably dangerous condition, that condition did not exist until she entered the store and stepped on the dry floor. Thus, LDT did not create or have any notice of any alleged unreasonably dangerous condition prior to Sisk falling.

## CONCLUSION

The motion for summary judgment was properly granted. At Sisk's costs, the judgment is AFFIRMED.

10