SEXTON, Judge.
The plaintiffs, Mr. and Mrs. John Wom-ack, appeal a trial court judgment denying their claim for damages against the defendant hospital. This claim arose when Mrs. Womack slipped and fell on a sidewalk owned and maintained by the defendant, Willis-Knighton Memorial Hospital. (Willis-Knighton Clinic, a lessee of property from Willis-Knighton Memorial Hospital, was released from the suit when it was shown that under the lease agreement, Willis-Knighton Memorial Hospital was responsible for maintenance of the sidewalks leased by the clinic.)
The incident occurred on the morning of October 1,1977, while Mrs. Womack was on her way to visit a sick relative. Mrs. Wom-ack, in recounting the events of the morning, stated that she first went to the clinic which adjoins the hospital, thinking that she could gain entrance to the hospital via *630 the clinic. She found the door locked and proceeded down the sidewalk. Upon coming to the junction where the sidewalk from the clinic joined the sidewalk leading to the hospital, Mrs. Womack testified that she stepped on something and began to slip. She looked down and saw that she had stepped upon a stack of “two or three” trash bags of a “greenish putty color.” She was unable to regain her balance and fell to the ground, landing on her right hip.
At the emergency room of the defendant hospital it was discovered that she had suffered a fracture of the neck of the femoral bone in her right leg. Surgery was performed on October 3, 1977 to replace the right femoral head with a prosthetic device. The surgery was successful but Mrs. Wom-ack alleges partial disability and continuing pain. Mr. and Mrs. Womack sued Willis-Knighton Clinic (which was dismissed as noted, supra), Willis-Knighton Memorial Hospital and St. Paul Fire & Marine Insurance Company, liability insurer of the hospital, alleging that" her injuries resulted from the negligence of the hospital and its employees.
The trial court heard testimony that at the time of Mrs. Womack’s fall Mr. Frank Bell and two employees of his were engaged in yardwork on the defendant’s grounds. Mr. Bell testified that trash bags, such as those described by Mrs. Womack, were being used by his employees. However, Mr. Bell testified that at no time were any trash bags placed on the sidewalk. His employee, Dexter Samuels, who was using the bags, testified to the same effect. Mr. Samuels did state that he placed some bags on the grass near the sidewalk. Mrs. Wom-ack testified that she saw the men working on the lawn but did not see any trash bags until she had stepped on them.
The trial court pretermitted any discussion of any possible negligence on the part of the hospital and also on the issue of whether the yardmen were employees of the hospital or independent contractors by finding Mrs. Womack contributorily negligent in the following terms:
“Mrs. Womack testified that she was looking out in front of her as she walked, but not looking down. She candidly stated that if she had looked down she would have seen the bags. She repeated this and said, ‘If the bags had been out in front of me, I would have seen them as they would have been in my line of vision.’ Further, she said, ‘When I stepped on them they scattered.’ She was able to observe this, she said, because she looked down after she had started to fall.”
We find the record amply supports this holding and thus there was no manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 5th Cir. 1978).
Mrs. Womack seems to contend that she should be relieved from her duty to observe because she was rounding a corner or curve. However, on this bright October morning there were no impediments to her view. She was not rounding a corner of a building. She was simply negotiating a turn in the sidewalk of something less than 90 degrees in an area that was wide open to view.
Plaintiffs further contend that in finding the plaintiff contributorily negligent, the trial judge must by definition find the yardmen negligent, thus leaving as the only question the responsibility of the hospital for the actions of the yardmen. We disagree. We note parenthetically that a fair reading of the trial court’s opinion causes us to believe that the trial court was more inclined to the yardmen’s version of the location of the bags than that of Mrs. Womack. However, a finding of contributory negligence by the trial court without reference to negligence does not require the reviewing court to accept the proposition that the defendant was negligent, nor does it require our review of the issue where we agree there was obvious contributory negligence. Smith v. U. S. Fidelity and Guaranty Company, 351 So.2d 1261 (La.App. 1st Cir. 1977). Andry v. Kinberger, 364 So.2d 613 (La.App. 4th Cir. 1978).
*631 Plaintiffs make a scholarly argument urging a duty-risk analysis[1] to the circumstances here presented to avoid the attachment of contributory negligence to the plaintiff. In so doing the plaintiff principally attempts to anologize Outlaw v. Bituminous Insurance Company, 357 So.2d 1350 (La.App. 4th Cir. 1978). In that case a nine year old child emerged from the protective cover of a golf bag and was hit in the eye with a poor drive. The court there held that the child’s contributory negligence would not bar his recovery because a mature golfer has a duty not to strike a golf ball in the vicinity of even a hidden child. The plaintiffs argue that an institution such as a hospital has a high duty to the persons attending due to the nature of its mission, particularly to persons of Mrs. Womack’s age who are likely to be present. Said another way, the likelihood of the aged or infirmed using these premises, and their particular susceptibility to objects on walks, creates a duty on the hospital’s part not to place such objects on a walk; so that if such objects are placed thereon by the hospital’s agents those falling over them are excused from the applicability of contributory negligence.
Though 67 years of age this plaintiff was an active person with no demonstrated infirmities. She had worked a good portion of her life until very recently. She quit work because of the poor business climate rather than for reasons of health. We see a clear distinction between the facts in Outlaw and those here presented. There is a difference between a mature golfer hitting a ball near a child and an institution allegedly placing bags on a walk in plain view of an active individual. We do not agree that the defendant’s duty to this plaintiff under these circumstances was such as to excuse her from her duty to maintain a proper lookout and see what she should have seen. Youngblood v. Newspaper Production Co., 158 So.2d 432 (La.App. 2nd Cir. 1963).
The final issue is the assessment of costs by the trial court. The court found that plaintiffs were entitled to $1,000 for medical expenses under the medical payments coverage of the insurance policy the defendant hospital had with St. Paul Fire & Marine Insurance Company and rendered judgment accordingly. The court then divided the costs equally between the plaintiffs and defendants. The plaintiffs complain that since a judgment was obtained defendants should bear all of the costs. The trial court has great latitude in the assessment of costs which will only be disturbed where clearly erroneous. LSA-C. C.P. Art. 1920, Gatheright v. State Farm Auto. Ins. Co., 352 So.2d 428 (La.App. 3rd Cir. 1977). We find no abuse in the assessment of costs by the trial court.
Accordingly, the judgment appealed from is affirmed and all costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. Johnson, “Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions” 37 La.L.R. 1 (1976), at pp. 43—45. See, Robertson, “Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc." 34 La.L.R. 1 (1973).