431 So.2d 907 (1983)
Dorothy SMITH and Elbert L. Smith, Jr., Plaintiffs/Appellants,
v.
RELIANCE INSURANCE CO., et al., Defendants/Appellees.
No. 15368-CA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
Gamm, Greenberg & Kaplan by Irving M. Greenberg, Shreveport, for plaintiffs/appellants.
*908 Rountree & Hicks by Gordon E. Rountree, Shreveport, for defendants/appellees.
Before HALL, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
Plaintiff brought suit for injuries sustained when her foot became entangled in a mat placed at the entranceway of a grocery store. The trial court rejected plaintiff's tort claims against the grocery store and its insurer, and plaintiff has appealed that judgment. We affirm.
Plaintiff in this cause is Dorothy Smith, a 50 year old Shreveport woman and the mother of eight. Defendants herein are Brookshire Grocery Company and its insurer, Reliance Insurance Company.
On December 30, 1978, Mrs. Smith was entering Brookshire's grocery store number 24, at 2001 Nelson, Shreveport, when her foot became entangled in a rubberized or polyethylene mat placed outside the store's entrance. Mrs. Smith wrenched her body in attempting to extricate her foot from the mat located at the entranceway. The incident allegedly caused muscular and soft-tissue injuries, pain and suffering. Mrs. Smith required treatment as a result of the accident and incurred medical bills and expenses. Mrs. Smith further contends that the injuries incurred on December 30, 1978, have incapacitated her from doing the manual work required by her previous employment.
Plaintiff filed suit on December 27, 1979, praying that she be awarded $100,000 in general damages for partial disability, and past and future pain and suffering. Plaintiff prayed also that she be awarded $22,277.43 in special damages for past and future medical expenses and loss of earnings. After a bench trial on the merits, the trial court rejected plaintiff's claims on the grounds that the plaintiff had not demonstrated that Brookshire's entranceway mat was defective or unreasonably risky. However, the trial court subsequently granted a motion for new trial and amended its judgment denying liability by granting plaintiff $1,000 under the medical pay provision of an insurance policy issued by Reliance to Brookshire. This policy provision was a no-fault stipulation which provided for up to $1,000 in coverage for any injuries sustained on the premises irrespective of Brookshire's fault.
Defendant-appellee Reliance has not appealed or contested the $1,000 award made to plaintiff under the no-fault medical pay provision of the insurance policy issued by it to Brookshire. Reliance has in fact expressly conceded the propriety of that $1,000 award. Thus the only question to be addressed on this appeal is whether the trial court properly rejected the liability of Brookshire and Reliance in tort.
Under the facts herein alleged, plaintiff could potentially obtain damages under either of two theories of recovery. A plaintiff may recover, under Civil Code Articles 2315 and 2316, for a store owner's negligence in failing to maintain reasonably safe store conditions. In the alternative, a plaintiff could recover in strict liability under Civil Code Article 2317 for a defective or unreasonably risky thing in the store owner's custody. We hold that this plaintiff is not entitled to judgment, however, since she has proven neither that the defendant was negligent nor that the thing in its custody was defective.
The incident at issue herein occurred between 10:00 a.m. and 11:00 a.m. on December 30, 1978. It was not raining at the time of the incident. Dorothy Smith was driven to Brookshire's Grocery Store at 2001 Nelson by her husband in order to purchase food for dinner on New Year's Day. Mr. Smith parked his car some 30 feet from the store entranceway in a parking space which abutted the walkway that ran directly adjacent to the store. Mrs. Smith disembarked from the automobile and walked on the walkway towards the entrance to the store.
The mat in question was placed on the walkway outside the automatically opening entrance door marked "In". The mat, which was approximately 3 feet by 6 feet, was placed lengthwise across the walk. Its 6 foot length thus traversed the walkway at *909 an angle perpendicular to the walkway. The mat itself is red-colored, and is made of a rubber-like or polyethylene substance. The bottom side of the mat is a thin sheet of rubber to which is affixed rubberized mesh. This mesh, which constitutes the entire upper surface of the mat and the surface upon which patrons walk, provides traction and reduces the risk of falls in wet weather. It is clear from the record that Mrs. Smith, in walking on the walkway adjacent to the store front, first encountered the mat "broadside" or at its lateral side, rather than at its end.
Virtually all of the evidence in the record as to what occurred upon Mrs. Smith's contact with the rug is contained in the following excerpt from her testimony:
"I was going into the store, on my way into the store, and when I knew anything, my left feet was in the mat, just how it got in it, I don't know, and I was trying to balance myself on my right feet, trying to keep from falling, and I was turning my body completely around, bouncing on one feet, and I didn't get any relief until my feet came out of the shoe. When my feet came out of the shoe, I stooped down and pulled my shoe from out into the mat (sic), which appeared to me just kind of folded up. I pulled my shoe out and put it on and went in the store."
Plaintiff established a causal link between Brookshire's mat and her sudden, off-balance contortions. The record also substantiates that plaintiff suffered measurable damages when she twisted and contorted her body after becoming entangled in the mat.
In asserting Brookshire's negligence, plaintiff relies heavily on Molaison, et al. v. West Bros. of Thibodaux, 338 So.2d 726 (La.App. 1st Cir.1976). In that cause, without reasons, the trial court granted recovery to a plaintiff who had tripped on a "rubber-based floor mat with carpet upper." The recited facts indicate that the plaintiff, who had one foot on the mat and one off, turned to follow her companions into the store after conversing with friends outside the entrance of the store. Apparently, as she pivoted on the foot which was on the mat, the foot that was off the mat her right footwent under the mat, and she fell.
Using a duty-risk or negligence analysis, the First Circuit found that the trial court was not manifestly erroneous "in believing that the mat in question caused the plaintiff to fall." The Court felt that, because of the number of patrons passing through the store, the likelihood that the mat would become dislodged and become a hazard was great, and thus the store owed a correspondingly high duty to protect its invited customers. The Court seemed to find that the fact that Mrs. Molaison suffered the accident indicated that the measures taken by the store to discover hazardous conditions were inadequate. In other words, the accident itself was proof of the inadequacy.
A storekeeper has an affirmative duty to exercise reasonable care to keep his floors in a safe condition. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Edwards v. Piggly Wiggly Operators, 401 So.2d 493 (La. App. 2d Cir.1981). He is not, however, the insurer of the safety of his patrons. Griffin v. Winn-Dixie, Inc., 287 So.2d 651 (La.App. 4th Cir.1973); Berglund v. F.W. Woolworth Co., 236 So.2d 266 (La.App. 4th Cir.1970).
In the case at bar the trial court found that "no defect in the premises was present," noting that the mat had been in use for six years and that no other incident had ever been reported. The court also found that the mat was not a foreign object and "did not present an unreasonable risk of harm." Also, in this case, in contrast to Molaison, plaintiff had not stopped on the mat but was walking across the mat at the time of the accident. She did not see the mat until she began to stumble. As we have already noted, this mat appears as innocuous as a mat might appear. The plaintiff is required to use reasonable care and to see what she should have seen. Womack v. Willis-Knighton Clinic, 412 So.2d 629 (La.App.2d Cir.1982); Youngblood v. Newspaper Production Co., 158 So.2d 432 (La.App.2d Cir.1963).
*910 We agree with Molaison that store owners have a high duty to their patrons to prevent unreasonably risky conditions and to maintain their stores in a reasonably safe condition. However, there is no demonstration whatsoever that this mat was awry or that it created an unusual risk of harm. Thus, we find no breach of the store owner's duty in this cause.
While we hold that the instant defendant was not negligent, we hold also, under a strict liability analysis, that the mat in defendant's custody was not defective.
The statutory basis for recovery under strict liability is Civil Code Article 2317 which provides, in pertinent part, that:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
However Article 2317 has never been construed to impose a mode of strict liability which, upon the showing of causation, is absolute and unconditional. The plaintiff must also prove that the "thing" upon which defendant's liability is predicated has caused the damage complained of. In addition to establishing this necessary causal link, plaintiff must additionally prove that the defendant had custody of the damage-causing thing. Plaintiff must demonstrate, finally, that the damage-causing thing in the custody of the defendant is defective. A thing is defective for the purposes of Article 2317, the Louisiana courts have maintained, when it presents an unreasonable risk of harm to others. It is no defense to an action in strict liability brought under Article 2317, that the defendant was not negligent or that he was unaware of the defective condition.
In summary, for a plaintiff to recover under strict liability, he must establish custody, causation, and defectiveness. Once these elements have been proven, a defendant having custody of the defective and damage-causing thing may avoid liability only by proving that the damage complained of was caused by the fault of third party, the fault of the victim, or an act of God. See generally, Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Loescher v. Parr, 324 So.2d 441 (La. 1975); Deville v. Calcasieu Gravity, etc., 422 So.2d 631 (La.App.3d Cir.1982); Tate v. Jacobs Engineering Co., 421 So.2d 321 (La. App. 1st Cir.1982).
We find that the plaintiff did not prove that the mat was defective or unreasonably risky. We have carefully examined the rubber mat admitted into evidence in order to determine for ourselves whether it could be considered unreasonably risky.
There are only two respects in which this mat could possibly be considered defective. It could be urged that its edge creates an unreasonable risk that patrons will trip over it. It could also be argued that it has a dangerous tendency to bunch up, or ridge, or crinkle when stepped on, which tendency could create an unreasonable risk of patrons tripping over such folds.
As to the first contention, the physical evidence, constituted by the mat itself, simply does not support the inference that the edge of the mat creates an unreasonable risk of patrons tripping over it. The mat is extremely flat and low to the ground, and is only raised from the ground about ¼ of an inch. It would have been difficult to construct a thinner mat. Furthermore, the edges of the mat do not present a rigid or immovable barrier that would amplify the chances of trips and falls. The edges of the mat are sufficiently flexible that in the unlikely event someone's foot should strike the thin edge of the mat, the mat would give and recede rather than rigidly obstructing or arresting a normal striding, stepping motion and thus causing a patron to trip over it.
An analysis of the mat and the record convinces us that it did not present an unreasonable risk of tripping patrons by folding or bunching. We are satisfied that the type and amount of pressure necessary to cause bunching and ridges would not be incidental to a normal or even a very unusual *911 gait. It appears, indeed, that a conscious effort would be virtually required to bunch or crinkle the mat. Our conclusion is that this particular mat is ordinary in appearance and operation, and that plaintiff has not proven that it is defective or unreasonably risky.
We conclude that plaintiff did not prove that the defendant Brookshire was negligent in its use or maintenance of the mat, or that the mat was defective or unreasonably risky. We therefore affirm the trial court's judgment dismissing plaintiff's tort claims and awarding plaintiff $1,000 under the no-fault medical pay provision of the insurance policy issued by Reliance. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.