401 So.2d 493 (1981)
Barbara J. EDWARDS, Plaintiff-Appellant,
v.
PIGGLY WIGGLY OPERATORS WAREHOUSE, INC., Defendant-Appellant.
No. 14556.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
Rehearing Denied July 15, 1981.
Rice & McWilliams by M. Carl Rice, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by James P. Bodenheimer, Shreveport, for defendant-appellant.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied July 15, 1981.
FRED W. JONES, Jr., Judge.
Plaintiff filed suit against defendant grocery store owner for injuries allegedly received *494 from a "slip and fall" incident on defendant's premises. From a judgment in favor of plaintiff, both parties appeal. We affirm.
According to the record, in the late afternoon of April 20, 1979, plaintiff entered defendant's grocery store located on West 70th Street in Shreveport, at a time when a heavy rain was falling. It had been raining continuously during the day. Plaintiff testified that she walked through one of the front doors and proceeded across a floor mat. As she placed her right foot on the end of the mat, that foot started sliding forward and plaintiff fell to the floor, injuring her right hand and wrist. Plaintiff explained that her foot slid because the mat was wet. She stated that there was a puddle of water surrounding the mat in the area where she fell.
Michael Brown, an employee of defendant at the time of the accident, testified that he saw plaintiff step off the mat, skid forward and fall to the floor. He further stated that when it rained hard, as it was when plaintiff entered the store, water would hit the sidewalk in front of defendant's store and flow into the front entrance. Although defendant's employees continually mopped the front entrance area, Brown asserted that this was futile because of the constant flow of water through the front doors of the store.
William Arthur, another of defendant's employees, also testified that during a hard rain water tended to blow into this store through the front doors. As a result the floor mats, placed just inside the front doors, would get wet and slide around. At times the mats became so saturated with water that they folded over and store employees had to straighten them out.
Defendant established, through the testimony of an employee, DeWayne Autry, and a Burns security officer, Ronald Boult, that the area where plaintiff fell had been mopped only a few minutes before plaintiff entered the store. The customary procedure, as explained by Boult, was for a "sacker" to pick up the wet mats, place them over a rail, mop the floor and then replace the mats on the floor. Autry conceded that at the time of the incident wind was blowing water up on the front doors.
It is axiomatic that a storekeeper owes an affirmative duty to those who use his premises to exercise reasonable care to keep his floors in a safe condition, Kavlich v. Kramer, 315 So.2d 282 (La.1975).
Upon proof that a foreign substance was on the floor at the time plaintiff entered, that plaintiff stepped on this foreign substance, and that it caused her to slip and fall, the burden shifts to defendant store owner to go forward with evidence to exculpate itself from the presumption that it was negligent. Kavlich v. Kramer, supra; Smith v. Winn-Dixie Stores of La., Inc., 389 So.2d 900 (La.App. 4th Cir. 1980).
In this case it was established that a foreign substance (water) was on the floor of defendant's store when plaintiff entered and it was more probable than not that stepping on a wet area caused her to slip and fall. Consequently, under our jurisprudence the burden shifted to defendant to rebut this presumption of its negligence. We find that it failed to discharge this burden.
Defendant argues that its duty to maintain the store premises in a reasonably safe condition was fulfilled by having its employees regularly mop the front entrance area, and cites in support of its position Lott v. Winn-Dixie La., Inc., 280 So.2d 659 (La.App. 4th Cir. 1973) and Griffin v. Winn-Dixie, Inc., 287 So.2d 651 (La.App. 4th Cir. 1973).
We note that in Lott the court observed:
"There is no showing here that the floor surface was unduly slick or smooth such that any wetness whatever would cause patrons to slip. Upon such a showing even continuous mopping may conceivably be insufficient care. In the absence of such a showing we cannot say reasonable care was not taken." (Emphasis added) p. 661
Similarly, it was pointed out in Griffin that:

*495 "In the case at bar the only evidence of water on the floor at the time of the accident was plaintiff's moist clothing and the assistant store manager's admission that customers may have tracked in a small amount of rain water in the five minutes since the floor had been mopped." p. 653
In contrast to those cases, here the foreign substance was not simply moisture tracked in by customers but was an accumulation of water flowing in through the front doors of the store. Employees of defendant stated that this condition obtained whenever it rained hard. As William Arthur testified, during those times "we'd have to get the squeegee on the sidewalk out front and inside the door." Michael Brown pointed out, however, that this proved ineffective because of the continual flow of water. Under these circumstances, even continuous mopping by defendant's employees would not have constituted sufficient care on its part for the safety of its customers.
We recognize, of course, that to require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safetywhich is not required. However, each of these "slip and fall" cases must be examined in the light of its particular circumstances. Where there are unusual accumulations of rain water, as existed here, due care requires that the storekeeper, in addition to mopping, take such affirmative measures as applying antislip compounds, posting warnings and/or installing flooring material designed to provide safe footing under the conditions.
In summary, for the reasons explained, we conclude that defendant failed to rebut the presumption that it was negligent. Furthermore, the record does not show that plaintiff was contributorily negligent. Therefore, the trial judge properly found defendant liable to plaintiff for her injuries.
In her appeal plaintiff argues that the general damage award by the trial judge was inadequate. We note that the judgment is simply for a lump sum amount of $7,965.71. Since the trial judge did not favor us with written reasons for judgment, nor does the record contain oral reasons, we do not know what portion of this judgment represents an award for general damages as opposed to special damages. In her brief plaintiff asserts that the general damage award was $4,400.
Plaintiff's primary injury consisted of a fractured right wrist which was repaired in an operation involving open reduction and internal fixation. She wore a cast for about six weeks. The treating physician assigned a 5% disability of the right arm as a result of this injury.
Assuming, as stated by plaintiff in brief, that the general damage award was $4,400, we do not find that this award, under the circumstances, constituted an abuse of discretion on the part of the trial judge.
The judgment of the trial court is affirmed, with costs of appeal to be divided equally.
PRICE, J., dissents and assigns written reasons.
PRICE, Judge, dissenting.
I must respectfully dissent from the majority opinion in this case. It is apparent that the majority opinion would concede that defendant would have carried its burden of exculpating itself from the presumption of negligence in this instance by its mopping procedure carried out three or four minutes before plaintiff entered the store except for the finding of the majority that the evidence showed there was an accumulation of water flowing in through the front doors of the store, and therefore continuous mopping was not sufficient care for the safety of defendants' customers. The conclusion that "there was an accumulation of water flowing in through the front doors" is not supported by the evidence. The substantial weight of evidence is to the contrary, and this finding is clearly wrong in my opinion.
*496 The majority relies principally on the testimony of a former employee, Michael Brown, a grocery sacker, whose testimony should be given little weight because of probable bias against defendant. The evidence shows that after the incident of plaintiff's fall, Brown quit his employment with defendant after being questioned about merchandise which was missing from the store. His apparent bias against defendant is displayed in his testimony under cross-examination when questioned as to how plaintiff located him for a witness. His testimony in this regard is as follows:
Q. Was this after you had quit that you saw her at the bus stop?
A. Yes, sir.
Q. And what did you tell her at the bus stop when you saw her?
A. I asked her how her arm was doing; was she better and all that. She asked me where I was working these days. She said her Court fall was coming up soon. I said good. I hope you win.
Although the majority opinion also relied somewhat on the testimony of William Arthur, another employee of defendant's, the record shows this witness was not at work on the day of the accident and his testimony is of little probative value.
The testimony of the plaintiff, Brown, and Arthur is contrary to that of Ronald Boult, DeWayne Autry, Betty Jean and Glenda Mathis. These persons all were present at the front entrance of the store at the time of the incident and each of these witnesses' testimony was consistent with the others and was more believable than that of plaintiff or Brown. They saw plaintiff, who did not have an umbrella, hurrying in the store to get out of the rain. They testified plaintiff was wearing wooden clogs on her feet, and as she made a right turn just inside the door entrance, she appeared to trip over her own feet and fall backwards. Each of these witnesses was in the area of the fall immediately after it happened to assist plaintiff and all denied seeing any puddle of water as contended by plaintiff. Their testimony certainly excludes any possibility of there being any unusual accumulation or flow of water through the door as depicted in the majority opinion.
The testimony of Ronald Boult should certainly be given controlling weight in this instance. He was a security guard employed by Burns Security Service on assignment to the defendant's store on the date in question. He was the person who directed the floor be mopped immediately before plaintiff entered. He was standing by plaintiff and was the one who assisted her to her feet after the fall. He was no longer working for Burns at the time of trial and had no relationship with defendant whatsoever.
The trial court gave no reasons either oral or written in finding for plaintiff. Therefore, this court has no basis on which to assume that the trial court made a factual finding that there was excessive water present or that water was flowing in the doorway as related by the majority.
Some water in the immediate entranceway to a store could reasonably be expected on a rainy day such as the one in question. Given the undisputed testimony relative to the mopping which immediately preceded plaintiff's entrance into the store, it is just as likely that the water on the floor had dripped from store patrons entering from the heavy rain. There was no evidence which would indicate that the floor surface was such that it became unusually slippery when damp or wet. A storekeeper is not the insurer of its patrons' safety and does not guarantee that its floors are in perfect condition. See Smith v. Winn-Dixie, 389 So.2d 900 (La.App. 4th Cir. 1980).
Under the facts presented the defendant has shown it exercised reasonable care in protecting its customers from risk of injury from an accumulation of water under the inclement weather conditions existing.
I respectfully dissent.