503 So.2d 1073 (1987)
Ella Mae SELLERS, Appellant,
v.
CADDO PARISH COMMISSION, et al., Appellees.
No. 18450-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Rehearing Denied March 25, 1987.
Writ Denied May 29, 1987.
James E. Franklin, Jr., Shreveport, for appellant.
Blanchard, Walker, O'Quin & Roberts by M. Allyn Stroud, W. Glen Mangham, Asst. Dist. Atty., Shreveport, for appellees.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
*1074 NORRIS, Judge.
This is a slip-and-fall case. The plaintiff, Ella Mae Sellers, claimed she was injured on an outdoor sidewalk at the David Raines Health Center on a wet December morning. She sought recovery on theories of strict liability and negligence against the Caddo Parish Commission, which owned and operated the center, and its insurer. After a bench trial, the trial court dismissed her claims. She now appeals, raising the same arguments as she presented at trial. For the reasons expressed, we affirm.
Mrs. Sellers was taking her three-month old baby to the health center at about 8:00 a.m. It was raining and had perhaps stopped by the time she arrived. Because the parking lot was crowded, she parked behind another parked car. Carrying her baby, she safely walked down the covered, outdoor sidewalk to the clinic's glass door, stepped over the four-inch concrete step and entered the waiting room. A few minutes later, she was in the doctor's office waiting for the baby to be seen when the administrator of the center, Mr. Armstrong, came through asking who was blocking his car; he needed to leave. Mrs. Sellers left the baby with a nurse and immediately headed out to move her car. She went out the same door and sidewalk as she had used moments earlier to enter. She went out the door, took two steps and then slipped on the sidewalk. She claims to have slipped in a puddle of standing water. She landed squarely on her right knee and hurt her back and neck as well. She got up, hobbled to her car and moved it. On her way back to the building, she ran into the exiting Mr. Armstrong, who told her to show her scuffed knee to the nurses.
This version of the incident was corroborated in part by an eyewitness, Mrs. Thomas, who observed it through the clinic's glass door. According to Mrs. Thomas, Mrs. Sellers slipped not in a puddle of accumulated water but right next to one, where no water was standing. This differs markedly from plaintiff's assertion on redirect that she was walking in water over her shoes.
To prove that the sidewalk was defective, Mrs. Sellers sent a professional photographer, Dr. Shell of Bossier City Community College, to take pictures of the pavement and the general area. These were admitted at trial. They show a long, narrow concave strip extending across the sidewalk. This would undoubtedly collect some water. However, between the date of the accident, December 14, and the day the pictures were taken, December 28, the Parish Commission had begun to break up the concrete to install a handicap-access ramp. The concrete strip appears freshly chipped and is almost certainly not in its original condition due to the construction work.
Mrs. Sellers proved that there were no warning signs, no handrails and no slip-proof welcome mat outside the glass door. However, the Director of Buildings and Grounds, Mr. Lowrey, testified that safety regulations do not require handrails when there is just one step. He said there was also no handrail by the new wheelchair ramp. He testified that although the Commission used interior mats it did not use exterior ones because they were so frequently stolen. Mr. Lowrey finally testified that the concrete was not slippery as it had a rough "broom swept" finish.
The plaintiff's injuries were not severe. Because she was feeling dizzy after the fall, she went to the emergency room at Willis-Knighton, where she was X-rayed and discharged the same day. She missed a day and a half from her job as a school bus driver. She saw her own doctor a few times and complained of back and neck pain. He diagnosed a muscular strain from which she should recover with no permanent disability. She experienced some discomfort and was sometimes unable to do her housework. She had to request a bus with an automatic transmission for a few weeks. Within three months of the fall, the discomfort had completely abated.
The first issue is whether the trial court erred in finding that the sidewalk was not defective. Under LSA-C.C. arts. 2317 and 2322, when a defect in a thing poses an *1075 unreasonable risk of harm to others, and the defective thing indeed causes harm, then the custodian of the thing is liable for the damage caused. Loescher v. Parr, 324 So.2d 441 (La.1975). The plaintiff bears the burden of proving both the defect in the thing that creates the unreasonable risk of harm and resultant damage. McKinnie v. DOTD, 426 So.2d 344 (La. App.2d Cir.1983), writ denied 432 So.2d 266 (La.1983). A defect is some flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. Naylor v. La. Dept. of Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writ denied 429 So.2d 127, 134 (La.1983). The plaintiff is relieved of proving that the owner or custodian knew or should have known of the risk involved. McKinnie v. DOTD, supra.
Mrs. Sellers argues in brief that the sidewalk was defective because it had a concave area that collected water, thereby creating an unreasonable risk of harm. The trial court found, however, that on the date of the accident the sidewalk did not have any surface irregularities. We have considered whether this finding is manifestly erroneous; given all the evidence, we conclude it is not. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Mr. Lowrey, the Director of Buildings and Grounds, testified that the construction began around Christmas. Mr. Ponder, a carpenter, said he broke the concrete as a first step toward adding the ramp. He recognized the work as his own and remembered when the photographer came on the scene. Moreover, the depressed area shown in the photographs looks like freshly chipped concrete with a pile of dust and shards at the side. This is more than sufficient evidence to support the trial court's finding that the concave depression was of very recent making. This finding is not manifestly erroneous.
We have also looked at other factors that might bear on the issue of defect. For instance, the sidewalk is covered; this keeps off most of the rain and serves to prevent a hazardous accumulation of rainwater. The pavement itself has a coarse finish; Mr. Lowrey's testimony to this effect is corroborated by the photos. Both Mr. Ponder and his supervisor, Mr. Garrett, said the sidewalk was basically flat with no irregularities before they began tearing it up. The only deviation from the level surface seems to be a slight grade away from the door. This, according to Mr. Lowrey, was an intentional construction design to allow water to run off the pavement into the grass. Even a perfectly nondefective sidewalk will get wet when it rains. Under all these circumstances, the danger of slipping and falling was minimal. See Spencer v. Aetna Cas. & Sur. Co., 488 So.2d 1116 (La.App.2d Cir.1986). We cannot say the trial court was wrong in finding no defect in this sidewalk.
The second issue is whether the trial court erred in finding the Commission not negligent. Mrs. Sellers specifically claims that the Commission, knowing that its walkway will become slick in the rain, should have placed a slip-proof welcome mat in front of the door, or posted a caution sign in plain view. She also suggests that a handrail could have been installed so she might break her fall.
Proof of fault in a negligence case, as in a strict liablity case, hinges on determining the probability and magnitude of the risk. This is balanced against the usefulness of the thing involved. The defendant owes a reasonable duty of care to protect plaintiffs from the risk. The defendant, however, may ordinarily absolve himself by showing he could not know of or prevent the risk. Hunt v. City Stores Inc., 387 So.2d 585 (La.1980); Spencer v. Aetna Cas. & Sur. Co., supra.
In support of her position, Mrs. Sellers has cited a number of cases where defendants were held liable for not warning their patrons about slippery substances on their floors. See, e.g., Perkins v. Springhill Gen'l Hospital, 278 So.2d 900 (La.App.2d Cir.1973); Edwards v. Piggly Wiggly Operators, 401 So.2d 493 (La.App.2d Cir.1981). These cases are distinguishable in that they pertain to polished, interior walkways, whereas Mrs. Sellers slipped on a coarse, exterior sidewalk while rainfall was in *1076 progress or had just ended. We have held that a shopkeeper owes a high duty of care to the customers inside his premises. Johnson v. Tayco Foods, 475 So.2d 65 (La. App.2d Cir.1985), writ denied 478 So.2d 149 (La.1985). We decline to hold that a customer is owed the same high standard of care when he is outdoors and can anticipate and plainly see that the paved surface has become wet with rainwater. This is the same kind of dual standard as the supreme court adopted for urban and rural property in Entrevia v. Hood, 427 So.2d 1146 (La. 1983).
The supreme court recently clarified the law of negligence in slip-and-fall cases in Brown v. Winn-Dixie La., 452 So.2d 685 (La.1984). Under Brown, the plaintiff must first prove that there was a foreign substance on the supermarket floor that caused him to slip. This proof creates a presumption of negligence. The burden then shifts to the store owner to prove he was not negligent. He can do so by citing his protective measures in light of the type and volume of his merchandise, the type of display, the floor space utilized for customer service, the nature of the customer service and the volume of the business. See also Gonzales v. Winn-Dixie La. Inc., 326 So.2d 486 at 488 (La.1976). Thus proof of actual or constructive knowledge of the foreign substance is "virtually eliminated" from the plaintiff's case. Mrs. Sellers contends that this shift of burden proves all the more convincingly that the Commission did not take reasonable steps to correct the condition or at least warn her of it.
The Commission argues in brief that Brown, like the earlier cases of Perkins and Edwards, supra, is limited to polished, interior floors. This is not necessarily correct. This court recently extended the rationale of Brown to include a covered, exterior driveway that was in fact a customer service area. See Davis v. Winningham Datsun-Volvo, 493 So.2d 719 (La.App. 2d Cir.1986). However, the driveway in Davis was part of the customer service area between two enclosed buildings and covered like an indoor construction.
Even with the holding of Davis, we are unable to see how the Brown and Gonzales rationale extends to the instant case. On an outdoor sidewalk, rainwater is not a foreign substance. In Davis, there was antifreeze on a covered driveway that was part of the service area between two buildings; in Brown, there was rice on the supermarket floor. These are indeed "foreign substances" while rainwater on the pavement outdoors is not.
Furthermore, the social and economic considerations at play in Brown and Gonzales do not apply here. Those cases hinged on findings of "space utilized for customer service, the nature of the customer service and the volume of business." 326 So.2d at 488. The sidewalk leading to the front door of the health center is not a "customer service" area. Reasonable preventive measures do not include wiping a sidewalk dry when it rains. The substance on the sidewalk did not get there by human mistake or negligence; it was natural and plaintiff knew it just as well as defendant did. All these considerations make Brown and Gonzales inapplicable to this case.
Moreover, the facts suggest that Mrs. Sellers did not succeed in meeting her burden of proof. Even if the pavement was wet and even if the Commission took no measures to dry it off, Mrs. Sellers has not shown by a preponderance of evidence that the rain made it slick and the slickness made her fall. Only Mrs. Sellers herself and one witness, Ms. Brown, said the area was slippery. Another plaintiff witness, Mrs. Rogers, said that water would accumulate but she would not say the surface was slippery. R. p. 233. The eyewitness, Mrs. Thomas, said that where Mrs. Sellers fell, there was not even a puddle. Mr. Lowrey and Mr. Ponder said the surface was broom swept, so it should not have been slick. With this evidence we cannot say that the trial court was plainly wrong in its implicit holding that Mrs. Sellers failed in her burden of proof.
Mrs. Sellers also strenuously argues the recent case of Bordelon v. Southern La. Health Care Corp., 467 So.2d 167 (La.App. 3d Cir.1985), writ denied 469 So.2d 989 (La. *1077 1985), which bears a certain resemblance to the instant case. In Bordelon, the plaintiff slipped and fell as she was exiting a hospital by the emergency room ramp. When she had entered, the ramp was dry, but moments before she left, some hospital employees had hosed it off. They not only created the slick hazard but failed to warn her of it even as they stood by. In the instant case, the Commission was neither responsible for the wetness nor silent in the face of a newly created man-made hazard. Thus Bordelon is distinguished.
In sum, we cannot say the trial court was wrong in holding that the Commission was not negligent for failing to place mats or issue warnings about the wet sidewalk. Likewise, the trial court's holding as to strict liability is affirmed. For these reasons, the judgment is affirmed at appellant's costs.
AFFIRMED.