515 So.2d 461 (1987)
E. Lee WEBSTER
v.
The TERREBONNE PARISH COUNCIL (formerly known as the Terrebonne Parish Police Jury).
No. CA 86 1149.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Writ Denied January 8, 1988.
Grady C. Weeks, Houma, for plaintiff and appellee E. Lee Webster.
Jerry L. Hermann, Houma, for defendant and appellant Terrebonne Parish Consolidated Government.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
GROVER L. COVINGTON, Chief Judge.
Defendant, the Terrebonne Parish Consolidated Government[1], appeals the judgment of the trial court awarding plaintiff $216,486.75 in damages, plus interest and costs, in this slip and fall case. The plaintiff, a bail bondsman at the time of this accident, alleged that he slipped on a wet *462 floor just inside the entrance to the Terrebonne Parish Courthouse Annex and suffered various injuries as a result. Because we find that the trial judge's factual and legal findings were erroneous, we reverse the judgment.
Plaintiff alleged in his petition that on August 2, 1983, he entered the Courthouse Annex building in Houma, Louisiana, and slipped because the floor was wet from being mopped. In presenting his case, he also attempted to prove that the floor of the building itself was defective because it was too slippery for safety, either through misapplication of wax or because of its terrazzo composition. All testimony was by deposition.
The testimony established that there were two eyewitnesses to the accident, a client who had arranged for plaintiff's services for a co-worker in jail, and the janitor in charge of the evening shift at the Courthouse Annex building. Plaintiff slipped almost immediately after entering the building, taking only one or two steps into a small foyer, which was separated from the first floor lobby by a set of double glass doors. The client, Daniel Snell, testified that the floor didn't look wet, but appeared shiny and slick. He stated that he never touched the floor where plaintiff fell to see if it was wet, but that he also didn't see any moisture on plaintiff's clothes. Snell, who was waiting in the lobby of the building for plaintiff to arrive, stated unequivocally that there had been no mopping in the twenty to thirty minutes that he had waited for plaintiff to arrive. It was undisputed that the weather outside was dry and sunny.
Norman Payne, the janitor, was the other eyewitness to the fall. He was waiting in the lobby for his afternoon shift to begin and the workers under him to check in at the time of plaintiff's fall. He stated that he did touch the floor immediately after the plaintiff got up and found that it was dry.
The only person other than plaintiff who stated that the floor looked wet was Norman Vilmer, the person whom plaintiff was bonding out of jail. Mr. Vilmer was not a witness to the fall, but came upon the scene only after plaintiff had picked himself up, met with Daniel Snell, completed his business transaction with the Sheriff's Department, and arranged for Vilmer to come downstairs from the second-floor jail, some ten to fifteen minutes after the fall. Vilmer also admitted that he never touched the floor to see whether it really was wet.
The trial judge found that plaintiff had met his burden of proving the floor was wet, specifically rejecting the testimony of Norman Payne since Payne was an employee of the defendant and also responsible for keeping the floors free from hazards. He held that under the standard of care applicable to other slip and fall cases, the defendant was liable for plaintiff's injuries since plaintiff had established the presence of a foreign substance on the floor which caused his fall, and defendant had failed to present any evidence to exculpate itself. We disagree.
In Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825 (La.1987), our Supreme Court recently held that the manifest error standard of appellate review applies when the record consists solely of written reports and depositions as well as when there is live testimony. Thus, we must give great weight to the trial court's findings where there is evidence which furnishes a reasonable factual basis for these findings. Canter v. Koehring Co., 283 So.2d 716 (La. 1973).
The record does not provide such support in this case. Only one eyewitness' testimony, that of Mr. Snell, was favorable to plaintiff, and it did not verify plaintiff's claim that the floor was wet, but merely that the floor looked shiny. However, even if the record conclusively established that the floor was wet, it would not necessarily follow that defendant was liable for plaintiff's fall.
Our review of the jurisprudence in the slip and fall cases convinces us that it was manifest error to hold a government body which owns a public building to the same level of care regarding floor conditions as is required of self-service supermarkets, *463 convenience stores, and department stores. Part of the rationale for imposing such a high degree of care for the latter group was stated by our Supreme Court in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976) at p. 488:
[T]he self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and clean-ups.
Moreover, these merchants and business owners deliberately attempt to divert their customers' attention from floors and walkways by designing and arranging displays of their merchandise, be it groceries, clothing, jewelry, or other items, so as to attract the eyes of the customers and promote sales. Under these circumstances, such business owners may justifiably be required to monitor and remedy premise hazards to a greater degree than other property owners. This is not to say that the nature of the duty changes from place to place; the duty remains constantto use reasonable care to protect business invitees against hazards which create an unreasonable risk of harm. What does change is the degree of risk itself posed by any foreign object on a floor, and the reasonableness of the methods used to remove the risk. Thus, the same object on a floor might be considered a premise hazard posing an unreasonable risk of harm in one business establishment, but not in another establishment that had a different traffic pattern and flow. Likewise, the frequency of floor checks and cleanups required by a premise with high volume of traffic would not be the same in an establishment with a routinely lower volume of traffic. The risk of harm is much less in the latter case.
In Gonzales v. Winn-Dixie, Louisiana, Inc., supra, the circumstances which determine the reasonableness of protective measures were stated as including "the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business." 326 So.2d at p. 488. In the present case, there were no displays of any kind designed to distract the attention of plaintiff, the area in question was a foyer wide enough to require a set of double doors, and there was an extremely low volume of traffic at the time. Thus, it would be unnecessary and absurd to require the defendant to monitor floor conditions in the same fashion as a large supermarket or department store. The uncontradicted testimony of the defendant's employee was that there were two shifts of janitorial workers, a morning crew and evening crew. His crew, the evening crew, began work at 3:30 p.m. and daily swept the halls with a cloth broom, wet mopped them two to three times a week at approximately 5:30 or 6:00 p.m. after the public had left the courthouse, and damp-mopped or cleaned up spills as needed. While there was no testimony in the record concerning the activity of the morning crew, it would be a reasonable factual inference to conclude that this crew had some duties regarding hallways and floors. In view of the absence of those factors which dictate higher riskno displays to distract an invitee's attention, no shelved merchandise to be handled and dropped by other invitees, a lower volume of traffic[2] to produce and obscure visibilitywe find that the efforts made by defendant to keep its floors reasonably safe were adequate.
The emphasis placed by plaintiff on the trial judge's finding that there was no floor mat inside the entrance is unwarranted under the circumstances of this case. Since the weather was dry and sunny, there was no contention that the floor was wet from rain or outside sources, which is the situation that a floor mat is intended to remedy. Therefore, the presence or absence of a floor mat in this case was irrelevant and not a factor in plaintiff's fall. Nor do we attach any significance to the wet floor signs left near the restroom doors inside the lobby. There was uncontradicted testimony in the record that the restroom floors *464 were wet-mopped daily, and that these signs were routinely left out for this reason and also to encourage people to be careful.
As for plaintiff's contention that the floor was defective because it was too slippery, either by nature or because of misapplication of floor polish, we note that this claim was never a part of any of the pleadings filed by plaintiff and the introduction of the deposition testimony and evidence on this matter was objected to by defendant. Nor did the trial judge make any reference to this testimony or findings in this regard. Where a decree is silent on an issue, such silence is to be construed as a rejection of the demands of a litigant. Rills v. Southern Bell Telephone Co., 305 So.2d 596 (La. App., 1st Cir.1974), and the cases cited therein. We find no error in this determination. We further note that plaintiff had traversed these floors frequently in the course of his business, and presumably was familiar with the floor surface. At no time did he claim the existence of the circumstances such as were found in Jones v. Recreation Park Commission of the Parish of East Baton Rouge, 395 So.2d 846 (La.App. 1st Cir.1981), writ denied, 400 So.2d 1379 (La.1981).
For these reasons, we reverse the judgment of the trial court and dismiss plaintiff's suit. Costs of this appeal are assessed to plaintiff.
REVERSED AND RENDERED.
NOTES
[1] In his original petition, plaintiff erroneously named The Terrebonne Parish Council as defendant; he subsequently amended his petition to correctly reflect The Terrebonne Parish Consolidated Government as defendant.
[2] The testimony established that no other person even entered the Courthouse Annex building through the entrance in question during the time that Daniel Snell waited for plaintiff to arrive.