535 So.2d 800 (1988)
Kathleen DICKSON, Plaintiff-Appellant,
v.
WAL-MART STORES, INC., Defendant-Appellee.
No. 19763-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
*801 C. William Gerhardt & Associates by William F. Kendig, Jr., Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for defendant-appellee, Wal-Mart Stores.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
MARVIN, Judge.
Plaintiff appeals a judgment rejecting her demands for personal injury arising out of an alleged slip and fall on an ice patch in a Wal-Mart parking lot the day after a light snowfall. The trial court found that she did not prove there was ice in the area where she fell and that if she did slip on ice as she claimed, Wal-Mart was not at fault.
The issue of the alleged ice patch is factual. Assuming an ice patch, the issue becomes one of the comparative duty of the store owner and the customer.
We find no clear error and affirm the judgment.

FACTS
Plaintiff and her husband say they went to the Wal-Mart store on Jewella Road in Shreveport to shop on Saturday, December 24, 1983, after 3:00 p.m. Wal-Mart employees with whom plaintiff spoke that day about the alleged fall said that the conversation occurred about 11:30 a.m. This conflicting testimony will be discussed below.
The National Weather Service records show that trace amounts of snow or ice fell at the Shreveport Regional Airport December 23 and 24 and that the maximum temperature *802 on those two days was 26° and 20° F. respectively. Plaintiff recalled that it had snowed December 23. No snow or ice was falling when she went to Wal-Mart.
Plaintiff said she saw ice on grassy areas near the store but did not notice any ice on the Wal-Mart parking lot before she departed her family vehicle. She said she slipped and fell on an ice patch in a shallow "ditch" near the rear of her husband's pickup as she walked toward the store entrance. This drawing, not to scale, shows the store, the parking lot, and plaintiff's intended path to the store:
*803 
*804 The "ditch" begins near the back of plaintiff's parking space and facilitates drainage of water from the parking lot into an area at the north end of the lot. Plaintiff estimated the "ditch" was about 18" wide, gradually declining to 3" in the center. A Wal-Mart employee, Bojako, who returned shopping carts to the store from the parking lot, described the "ditch" (or depression) as about four feet wide gradually declining to a two-inch maximum depth at the center. Plaintiff's photographs lead us to agree with the Wal-Mart employee's description of the ditch or drain as "hardly noticeable." Plaintiff said the ditch was leveled off after the accident and before the pictures were taken, but two Wal-Mart employees testified that construction work in the parking lot after the accident was in a different area and did not involve the drainage ditch.
Plaintiff routinely shopped at the store each week for about a year before the accident. She said she knew the drain or ditch was there but did not look at it before she fell. Instead, she looked to her left and right for approaching traffic. She said she intended to walk behind her truck and the truck parked to the left. Her testimony and photographs indicate that plaintiff fell on the left side of her truck just past the rear wheel, and not behind it. Plaintiff denied that she was diagonally walking across the parking spaces instead of walking behind them. She said she did not see ice in the drain before she fell or anywhere else in the parking lot after she fell.
Plaintiff does not contend the ditch itself was unreasonably dangerous. She argues that Wal-Mart should have discovered and removed or salted the ice or warned her of its presence. She said the ice patch was about 18 inches across and about two feet long. Plaintiff's husband, however, estimated the patch was about four feet wide and about 100 feet long. Neither could say whether the ice was smooth or jagged nor describe its color.
Plaintiff and her husband reported the fall to Debbie Blanc, the customer service manager, inside the store. They asked her to have the ice patch salted. They saw her send a man outside with a sack of salt but they did not go back outside with him.
Ms. Blanc knew plaintiff by sight and by name since she was a regular customer and recognized her truck in the parking lot. She pointed out the truck to John Bojako, Wal-Mart's maintenance and cleanup man, and sent him out to find and put salt on the ice patch. He did not mention the truck in his testimony but said he found no ice in the area Ms. Blanc pointed out to him. He did find and salt an ice patch measuring about 18 inches in diameter in a parking space two rows to the left of where plaintiff's truck was parked, in a space near the store entrance in Section D as labeled on the diagram above. This ice patch was in the front of the parking space where the car front would be and not behind the parking spaces where customers walk to the store. When Mr. Bojako returned inside from his mission, he "fussed" at Ms. Blanc because there was no ice in the area she pointed out to him.
For about 20 minutes after reporting the fall plaintiff and her husband shopped, but made no purchases. Plaintiff said she did not pass or look for the ice patch as she walked back to the truck.
Plaintiff worked for Ben Bacon Lures five days a week, Monday through Friday. She testified she worked until noon on Christmas Eve in 1983, a Saturday, and left work around 3:00 p.m. after having Christmas dinner and exchanging gifts with her co-workers. She said she went home and got her husband after she left work and they went to Wal-Mart. Plaintiff's husband recalled going to Wal-Mart after he picked her up from work "along in the middle of the day."
Mr. Bojako worked at Wal-Mart until noon on Saturdays. He left the store around noon on Saturday, December 24, 1983. He said Ms. Blanc sent him out to look for ice in the parking lot around 11:30 a.m., saying that a customer had reported a fall. Ms. Blanc, who knew plaintiff by sight and by name, recalled directing Mr. Bojako to attend to the ice after plaintiff reported her fall. Plaintiff said she had *805 known Debbie Blanc "since she was a little girl."
Plaintiff, 63 years old in 1983, described her injuries as a bruised right hip and pain in her back and her knee. She saw a doctor a few days after the fall. He prescribed crutches and pain medicine to relieve her discomfort. Abnormalities shown in X rays were caused by aging rather than trauma and were considered normal for someone plaintiff's age (63). Plaintiff's doctor attributed no permanent residual disability as a result of the fall.
Another doctor performed diagnostic surgery on plaintiff's knee about two years after the fall. He opined her knee injury was more likely caused by degenerative arthritis than by a slip and fall, while agreeing that a slip and fall could aggravate a pre-existing degenerative condition.
Ms. Blanc testified that when the fall was reported to her, plaintiff's husband commented, "Well, you know how it is with those old arthritic knees of hers." Plaintiff and her husband denied that this was said and denied that she had any problem with her knees before the fall.
Ms. Blanc and Mr. Bojako arrived at the store before 9:00 a.m. They each parked in the extreme southwest corner of the parking lot and did not see any ice in the parking lot as they walked toward the store. Mr. Bojako said he "eyeballed" the customer parking area because he knew he would be walking through the area to retrieve shopping carts. He described the area as "clear" and said he did not see any debris or foreign matter.
Early that morning, Mr. Bojako salted an ice patch on the sidewalk in front of the store because it gave him trouble when he pushed shopping carts into their storage area on the sidewalk. There was no ice on the ramp he used to get the carts from the parking lot to the sidewalk. He walked and pushed carts across the drainage ditch, in the area where plaintiff later parked, several times before noon and did not see or encounter ice in the ditch or in any other pedestrian or walking areas of the parking lot. He said if he had seen ice patches in the walking areas of the parking lot, he would have salted them. The ice patch he found was in a space two rows over from plaintiff's parking space, a space that would be covered by the front of a parked car, not in the walking area behind the car.
After seeing plaintiff's photographs showing exactly where she contended she fell, Mr. Bojako was asked whether there was ice in that spot when Ms. Blanc sent him outside. He said no, explaining he was up and down that area, near the backs of the parked cars, all that morning, and he knew there was no ice there. Plaintiff said, "there was no ice on the parking lot other than there [in the ditch]."

TRIAL COURT FINDINGS
The trial court found that plaintiff "failed to prove by a preponderance of the evidence that she did, indeed, slip on ice on the Wal-Mart parking lot, as she claims." The court noted that there were no witnesses to the fall other than plaintiff and her husband, and they gave vastly different estimates of the size of the ice patch. Weighed against their testimony was that of Mr. Bojako, who saw no ice in the drainage ditch when he crossed it several times that morning with shopping carts.
The court continued:
Assuming, arguendo, that she did slip on ice as she testified, it appears that [plaintiff] is solely responsible for her fall for negligently failing to see what she should have seen ...
[A] storekeeper has a duty to keep parking lot areas in a reasonably safe condition, and may not permit hazardous conditions of which he has actual or constructive notice to exist. In Bolin [v. National Tea Co., 359 So.2d 690 (La. App. 1st Cir.1978), writ denied], the [court] stated that
"on the other hand, the patron in such areas is charged with using reasonable care for his own safety and must see and avoid obvious hazards. The patron in the display area does not have this burden because his attention is attracted to the items displayed on the *806 shelves of the store." 359 So.2d at 691.
[N]o evidence of actual or constructive notice to Wal-Mart has been shown. Further, assuming that there was ice present on the parking lot in the area described by [plaintiff], but nowhere else as she testified, it is apparent that [she] should have seen the ice and taken steps necessary not to fall on it. Her testimony shows that the area was well lit by daylight. At the time of the fall, she was walking in the direction of the alleged ice ... but she was looking to the rear and turned around only at the moment she slipped on the ice. She testified that she was very familiar with the Wal-Mart parking lot and the shallow depression used to drain water from the parking lot in a south to north direction. Under these circumstances, [she] should have been looking in the direction in which she was walking, and if she had done so, she would have seen any existing ice, and simply avoided it.

STANDARD OF CARE; BURDEN OF PROOF
A storekeeper must make reasonable efforts to keep the store free of premise hazards which may cause a customer to slip and fall. Kavlich v. Kramer, 315 So. 2d 282 (La.1975). A premise hazard is a condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances of the case. Johnson v. Ins. Co. of North America, 360 So.2d 818 (La. 1978).
If a customer proves there was a premise hazard on an interior or exterior surface of the store which caused a fall and an injury, the store owner is presumed to be negligent and must present evidence to exculpate itself from this presumption. Kavlich v. Kramer and Bolin v. National Tea Co., supra. Notwithstanding this shift in the burden of going forward with the evidence, the store owner is not the insurer of the customer's safety and is not liable unless the totality of the evidence establishes fault under the Civil Code. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976).
If the customer falls inside the store, the premise hazard is deemed to have been caused either by a store employee or by another customer, and the plaintiff does not have to prove the store had actual or constructive knowledge of the hazard. Rather, the store owner must prove that its employees did not cause the hazard and that it exercised sufficient care to discover under most circumstances a hazard caused by customers. See Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984). If the store owner proves reasonable inspection procedures but does not prove that its employees did not cause the hazard inside the store, the customer will prevail. See McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987).
The Louisiana Supreme Court has not squarely addressed whether the customer must prove the store owner had actual or constructive knowledge of premise hazards outside the store. Decisions from the other circuits have not required this of a customer-plaintiff.
In Bolin v. National Tea Co., supra, the plaintiff slipped on a soft drink bottle in a grocery store parking lot. Two store employees testified they did not see the bottle when they arrived at work on the day of the accident. The time of the fall was not reported. The court affirmed a judgment against the store owner, which was presumed to be negligent once plaintiff proved she fell on a foreign object, and which did not prove adequate efforts to keep the parking lot in a reasonably safe condition. The court did not require plaintiff to prove the store owner's knowledge of the hazard, notwithstanding its statement, quoted by the trial court here, that the store owner may not permit parking lot hazards "of which he has actual or constructive notice" to exist. 359 So.2d at 691, 692.
A judgment in favor of the store owner was affirmed in Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App.3d Cir. 1988). The customer slipped on a tomato in the store's parking lot. The store rebutted the presumption of negligence by evidence *807 of adequate cleanup and inspection measures. The court cited Bolin for the law applicable to falls outside the store and did not mention the store's knowledge of the hazard as an element of the plaintiff's case. 523 So.2d at 914, 915.
We shall disregard the trial court's statement that "no evidence of actual or constructive notice to Wal-Mart has been shown." We also disregard the requirement in interior fall cases that the store prove its employees did not cause the hazard, since there is no question that any ice in the parking lot resulted from the recent winter weather. We consider only whether plaintiff proved a premise hazard and if so, whether defendant proved reasonable protective measures to rebut the presumption of negligence.

PREMISE HAZARD
The premise hazard of which plaintiff complains is the ice patch and not the "ditch." The trial court weighed the conflicting testimony and found plaintiff did not prove, by a preponderance of the evidence, that there was ice in the ditch. This factual finding is supported by the record, taking into account the trial court's reasonable evaluation of credibility, and is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Plaintiff and her husband gave significantly differing estimates of the size of the ice patch and did not otherwise describe it. The trial court had reason to doubt plaintiff's credibility after plaintiff's testimony about the time of the fall was effectively impeached. Wal-Mart employees denied her contention that the drainage ditch was leveled off after her fall and before her pictures were taken. One employee who repeatedly traversed without incident the area where plaintiff claimed there was ice, did not see any ice in the ditch. Plaintiff said she did not attempt to observe the ice patch when she traversed the area and returned to her truck after leaving the store.
The presumption of the store owner's negligence does not arise until plaintiff proves a premise hazard by a preponderance of the evidence. See Johnson v. Ins. Co. of North America, supra; Kinchen v. J.C. Penney Co., Inc., 426 So.2d 681 (La. App. 1st Cir.1982); and McCargar v. Babin Motors, Inc., 499 So.2d 1081 (La.App.3d Cir.1986).
In Johnson, several fruit juice cans on a supermarket shelf fell and hit plaintiff's leg as she reached toward a higher shelf for another item. The supreme court reversed a judgment in her favor because she failed to prove that the cans were stacked in a dangerous manner.
In Kinchen, no premise hazard was found from evidence that plaintiff stepped onto a polished tile floor while her shoes were wet from rainwater she stepped in outside the store. The plaintiff in McCargar fell in the parking lot of a car dealership but no foreign substance was seen by witnesses at the accident site and plaintiff's expert witness could not determine what caused a red stain on his pants which was not noticed until after his pants were taken off at the hospital. No premise hazard was found.
We cannot say the trial court was clearly wrong in finding that plaintiff did not prove a premise hazard. We also agree with the trial court's discussion of issues which arise if the existence of the ice patch, as a premise hazard, is assumed.

PROTECTIVE MEASURES
The store owner must take reasonable steps to discover, and to prevent injury from, unreasonably dangerous conditions. The adequacy of the protective measures is reviewed in light of the risk involved, as determined by such factors as volume of business, time of day, and section of store premises. Brown v. Winn-Dixie Louisiana, Inc., supra; Johnson v. Tayco Foods, 475 So.2d 65 (La.App.2d Cir. 1985), writ denied.
Before the Wal-Mart store opened at 9:00 a.m., Mr. Bojako looked over the parking lot for debris and foreign matter and paid particular attention to whether there was ice in the customer parking area. He found and salted one ice patch on the *808 sidewalk in front of the store. Wal-Mart's contention that the parking lot was virtually free of ice that day is corroborated by plaintiff, who said the ice patch she slipped on was the only one she saw in the parking lot. The small ice patch Mr. Bojako found in the front of a parking space other than where plaintiff parked was not in an area where customers ordinarily walked. Because the accident happened no sooner than 11:30 a.m. and Mr. Bojako arrived before 9:00 a.m., we cannot agree with plaintiff's contention that the contractor who cleaned the parking lot for Wal-Mart on the night of December 23 should have been called as a witness by Wal-Mart.
The parking lot was relatively free of ice when the store opened on December 24. No new snow or ice fell on the parking lot during the day. Mr. Bojako crossed the drainage ditch and other areas of the customer parking lot throughout the morning and was alert to the possibility of ice hazards for his own safety as well as for the safety of store customers. He salted one ice patch where customers walked and said he would have salted others if he had noticed ice. Wal-Mart's efforts to discover ice hazards were reasonable and adequate under the circumstances.
As to assumed obvious hazards created by precipitation in a customer parking lot, the respective comparative duty of the store owner and the customer should not be as divergent or disproportionate as inside the store where the customer's attention is directed to displayed merchandise and away from the floor. See Johnson v. Tayco Foods, supra, and Sellers v. Caddo Parish Com'n, 503 So.2d 1073 (La.App.2d Cir.1987), writ denied. Compare Rutledge v. Brookshire Grocery Co., supra.
Plaintiff was not distracted in the parking lot. She knew there may be some ice on the lot. She knew where the drainage ditch was and that it presented a slight irregularity in the parking lot surface. She was not crossing the path of approaching traffic where she allegedly fell and did not give reasonable attention to the surface of the parking lot on which she was walking.

CONCLUSION
Under the circumstances of this record, Wal-Mart's protective measures were reasonable and adequate to rebut any presumption of negligence, even assuming the presence of the ice patch as a premise hazard. Wal-Mart was not required to warn plaintiff of the obvious hazard of an occasional ice patch on the parking lot the day following light precipitation when the temperature on those two days did not exceed 26 ° F.

DECREE
At plaintiff's cost, the judgment is AFFIRMED.