588 So.2d 1357 (1991)
Leon SIMMONS, Plaintiff-Appellant,
v.
CITY OF MONROE, Defendant-Appellee.
No. 22393-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
Writ Denied January 17, 1992.
*1359 Bruscato, Loomis & Street by Anthony J. Bruscato, for plaintiff-appellant.
Nanci S. Summersgill, for defendant-appellee.
Before MARVIN, SEXTON, LINDSAY, HIGHTOWER and BROWN, JJ.
*1360 BROWN, Judge.
On April 2, 1987 plaintiff, Leon Simmons, drove to the Monroe City Hall for the purpose of paying his water bill. As plaintiff climbed the steps leading to the front door of the building, he stepped on a candy bar, slipped and fell. Plaintiff sued defendant, City of Monroe, for injuries received in the fall. This case was tried on April 17, 1990 and the trial court gave written reasons for its rejection of the demands of plaintiff on May 31, 1990. Plaintiff appealed and we reverse and render judgment in plaintiff's favor against the City of Monroe.
The evidence is not in dispute. Inside City Hall was a concession stand which sold candy bars and other edible items. Two Monroe City employees, Mary Williams and Alphonso Williams, were standing at the entrance of City Hall while taking a break during the lunch hour from their duties to maintain and clean the premises inside City Hall when they noticed plaintiff climbing the steps and watched him slip and fall. After the fall Alphonso Williams viewed the candy bar with plaintiff and Williams noted on it the impression of a footprint. Williams disposed of the candy bar in a trash receptacle. As directed by Mary Williams, plaintiff reported the accident to the City's legal department. At the instruction of the City Attorney's Office, Alphonso Williams retrieved the candy bar. Unfortunately the City Attorney's Office discarded the candy bar and neither it nor photographs were available at the trial.
Plaintiff called Curtis Martin to testify. Mr. Martin was the City of Monroe's employee whose duties included maintenance of the grounds outside of City Hall. Mr. Martin testified that his crew of three to five employees cleaned around City Hall once a week, primarily cutting the grass. Mr. Martin maintained no records as to when he actually policed the premises and the trial court found that Mr. Martin's crews "in performing their duties might look around the walks and steps once every week or so to determine if anything was amiss on these walks." (emphasis added)
This case does not involve a defect in the premises but a defect on the premises and strict liability under LSA-C.C. Art. 2317 as well as limitations on strict liability found in LSA-R.S. 9:2800 are not applicable. This case is one of negligence under LSA-C.C. Art. 2315. Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App. 2d Cir.1988), writ denied, 524 So.2d 520 (La.1988).
Defendant had a duty to use reasonable care to protect patrons of City Hall against hazards which created an unreasonable risk of harm. Waters v. McDaniel Recreation Center, supra; Sellers v. Caddo Parish Commission, 503 So.2d 1073 (La.App. 2d Cir.1987), writ denied, 506 So.2d 1229 (La.1987); Webster v. Terrebonne Parish Council, 515 So.2d 461 (La. App. 1st Cir.1987), writ denied 516 So.2d 368 (La.1988). Plaintiff carried his burden of proof that a hazardous condition did exist. The candy bar presented a danger and the issue is whether the City used reasonable care to protect visitors against this hazard.
Mr. Martin's testimony demonstrated that there was no cleanup policy for outside of City Hall. His employees were there to cut the grass and might look around once a week to see if any trash was on the steps. Under these circumstances plaintiff proved a breach of its duty by defendant. We recognize that inside City Hall more frequent inspections would be needed than on the grounds outside, but some routine cleanups were necessary on this heavily traveled walkway. Sellers, supra. Considering the number of visitors to City Hall and the selling of concession items inside City Hall, the City breached its duty to its patrons by not providing some routine policing of the steps. Plaintiff proved that the City had no standard procedure and no records to support any effort to protect visitors from the harm presented in this case.
It is equally clear that comparative negligence is applicable to plaintiff. A person has a duty to see and avoid obvious hazards. Gray v. La. Downs, 585 So.2d 1238 (La.App. 2d Cir.1991); Weber v. Buccola-McKenzie, *1361 Inc., 541 So.2d 315 (La. App. 5th Cir.1989).
In allocating comparative fault, consideration must be given to the nature of each party's conduct and the extent of the causal relationship between the conduct and the damages claimed. Some of the factors which may influence the degree of fault assigned to parties are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actor, whether superior or inferior, and 5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. Watson v. State Farm Fire And Casualty Ins. Co., 469 So.2d 967 (La.1985); Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990); Lee v. Great Southwest Fire Insurance Co., 493 So.2d 789 (La.App. 2d Cir.1986).
Plaintiff testified at trial that he did not observe the candy bar on the steps. The photographs introduced into evidence show seven steps divided by a handrail. The steps are wide, unbroken and free of any obstructions which would distract or block the view of an approaching visitor. The candy bar that was recovered by the City Attorney's Office was neither photographed nor kept available for trial and thus we are not sure exactly of its coloration or size. The testimony, however, of the two City maintenance employees who watched plaintiff climb the steps indicated that plaintiff was not walking unreasonably or imprudently. Alphonso Williams, the city employee who observed the fall, testified that he noticed the candy bar when he walked over and saw where plaintiff's foot had slid through it. Williams further testified that it was a large candy bar. Comparing the absence of reasonable inspections and cleanup procedures by defendant with plaintiff's conduct, we assess plaintiff with 50 percent fault.
When plaintiff fell he landed on his knees. Plaintiff had extended his arms to break his fall, thus causing injuries to the palms of his hands. After the fall plaintiff rolled over into a sitting position and after a few seconds, he embarrassingly proceeded into City Hall to pay his water bill. As he began to experience pain in his hands and knees, plaintiff returned to the accident scene and talked with Alphonso Williams and also properly reported the incident. Plaintiff continued to suffer pain throughout the remainder of the day and eventually was seen by Dr. Danny Gilbert on April 9, 1987.
Dr. Gilbert, a board certified family practitioner, found slight swelling near the wrists which was consistent with plaintiff's testimony of minor injuries to his hands. Dr. Gilbert found injuries to plaintiff's knees and prescribed medication and rest. X-rays suggested a possible chip fracture of the tibia at the right knee joint and revealed soft tissue swelling in both knees. The right knee worsened with persistent effusion or fluid in the knee joint, limitation of range of motion and tenderness. After consulting with an orthopedic surgeon, Dr. Gilbert prescribed crutches and a splint for four to six weeks.
Dr. Gilbert treated plaintiff until October 1987 with a final diagnosis of a "contusion right knee with probable fracture of the tibia and exacerbation of preexisting degenerative joint changes." Dr. Gilbert concluded that "either there was a fracture and it had not healed properly or the exacerbated arthritis was not being well controlled." Dr. Gilbert recommended evaluation by an orthopedic specialist. Because of plaintiff's lack of funds this evaluation was not performed.
Dr. Gilbert testified that the x-rays and examination at the first visit were the same for both knees. Dr. Gilbert, however, found that the same arthritic condition in the left knee had become asymptomatic by October 1987. Dr. Gilbert examined plaintiff on April 16, 1990, one day prior to trial, and found that the left knee continued to be asymptomatic while the right knee had worsened. Dr. Gilbert concluded "that the right knee cannot improve without surgical intervention" and estimated the cost to be $10,000 to $15,000.
*1362 Plaintiff was a 52 year old former Grambling University football player who was 6 foot 3.5 inches tall and weighed about 288 pounds. He had preexisting arthritic conditions in both knees but, significantly, only developed continuing problems in the right knee. A tortfeasor takes his victim as he finds him and is fully responsible for the exacerbation of a preexisting condition. Dale v. Carroll, 509 So.2d 770 (La.App. 2d Cir.1987).
In making an initial award of damages at the appellate level, we are not limited to either the highest or lowest amount which could be affirmed. Instead, based upon the record, we determine an award which would be appropriate. Lee v. Great Southwest Fire Insurance Co., supra; Wall v. American Employers Insurance Co., 377 So.2d 369 (La.App. 2d Cir. 1979), affirmed, 386 So.2d 79 (La.1980). Under the circumstances of this case we award $40,000 in general damages and $10,000 in future medical expenses together with past medical expenses of $671.47. Dale v. Carroll, supra; Jones v. Northbrook Insurance Co., 544 So.2d 742 (La. App. 3d Cir.1989), writ denied, 548 So.2d 1234 (La.1989); Levie v. Orleans Parish School Board, 537 So.2d 351 (La.App. 4th Cir.1988), writs denied, 538 So.2d 616 (La. 1989), and 538 So.2d 617 (La.1989); Wallace v. State Farm Mutual Insurance Co., 509 So.2d 466 (La.App. 3d Cir.1987), writ denied, 510 So.2d 377 (La.1987).
Dr. Gilbert testified that since the fall plaintiff would not be capable of working at a physical type of job. Plaintiff was unemployed when his accident occurred. His previous employment was with Sears in its warehouse for nine years. The Sears job required physical labor and ended when the warehouse closed. Plaintiff also worked a second job as an overhead crane operator for O'Neal's which ended when the company moved to Shreveport. Between these two jobs, plaintiff was employed on a full-time basis for more than 40 hours per week. After these jobs ended, plaintiff worked as a cook, painter and carpenter.
Even if a plaintiff is unemployed at the time of an injury, he is entitled to an award for impairment or diminution of earning power. Earning capacity is not necessarily determined by actual loss. Damages may be assessed for the deprivation of what an injured plaintiff could have earned. Such damages are calculated on the person's ability to earn money rather than on what he actually earned before the injury. The theory is that the injury has deprived the plaintiff of a capacity which he would have been entitled to enjoy even though he may never have profited from it. Awards for lost earning capacity are inherently speculative and are intrinsically difficult to calculate. Factors to be considered in determining a proper award for lost earning capacity are plaintiff's physical condition before injury, past work history and consistency thereof, amount plaintiff probably would have earned absent the injury and probability that plaintiff would have continued to have earned wages over the remainder of his working life. It is first necessary to determine whether and for how long plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of injury and whether he has been disabled from work for which he is fitted by training and experience. Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La.App. 2d Cir. 1988); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987); Crowther v. KMART Corporation, 568 So.2d 669 (La.App. 4th Cir.1990), writ denied, 571 So.2d 656 (La.1990).
The record shows that plaintiff sustained debilitating injuries which did prohibit his ability to work for a limited period of time. Although plaintiff's employability and amount of lost earning capacity are not capable of determination with mathematical certainty, we find $30,000 fairly compensates him for the loss of earning power during the period of his disability.

DECREE
For these reasons, the judgment of the trial court is REVERSED and SET ASIDE *1363 and judgment is hereby entered in favor of the plaintiff awarding him damages in the amount of $80,671.41 together with legal interest from the date of judicial demand. This award is subject to a reduction of 50 percent due to the comparative fault of plaintiff. Costs on appeal and in the trial court are assessed to defendant.
SEXTON, J., concurs with written reasons.
LINDSAY, J., concurs in the result.
HIGHTOWER, J., dissents with reasons.
SEXTON, Judge, concurring.
While I would assess the city with less fault, I generally agree with the extent of plaintiff's recovery.
HIGHTOWER, Judge, dissenting.
In this important case, premised upon a single piece of litter located on sidewalk steps in front of a city hall, the majority reverses the trial court and imposes liability on the municipality, after apparently applying the same standard of care as demanded of merchants in slip and fall cases.

A.
During the lunch hour of a dry, sunny day, plaintiff parked his vehicle near the Monroe City Hall and began walking in the direction of the front entrance of that building. On the steps of a broad sidewalk leading toward the entryway, he apparently slipped on an unopened eight-inch candy bar, fell and sustained certain injuries. At trial, plaintiff admitted that he did not see anything on the steps before falling. When asked where he was looking, he stated, "I was looking at the ... you know, going at the door, you know, facing and going up to the door to go in." Photographs disclose the entrance of the building to be located a considerable distance from the steps; this is not a case of debris being situated in, or very near, the entryway. [Indeed, testimony by one witness suggests the fall occurred near the curb.]
In addition to two witnesses who observed the incident, plaintiff called a Curtis Martin, whose supervisory duties as a municipal employee included care of the premises outside the Monroe City Hall complex. Revealing that he and his several-person crew weekly policed the area for litter, Martin stated that such intervals were commensurate with the number of city employees available for this type of work. Aside from the foreign object previously mentioned, one candy bar, the record fails to disclose any other clutter in the vicinity of the accident site.
After plaintiff rested, the city requested an involuntary dismissal as provided by LSA-C.C.P. Art. 1672. When the court denied that motion, the municipality offered no other evidence. Later, after receiving briefs and concluding that the evidence failed to show any unreasonable condition that could not be observed with reasonable attention, the trial court rejected plaintiff's demands.
On appeal, plaintiff-appellant carefully asserts that his case stands on allegations of negligence, rather than strict liability. He argues that he did not act unreasonably or imprudently in failing to see the candy bar, and that persons should be able to assume such steps are safe for use. He maintains that, having shown a slip and fall on a foreign object, a presumption of negligence arose and necessitated that the city prove adequate maintenance procedures. Of course, it is further contended that the municipality failed to meet that burden. Alternatively, he feels comparative negligence should apply to afford relief.
Conversely, the city argues that plaintiff slipped on an easily observable object lying on the steps, and that a public entity is not an insurer for injury resulting from those readily visible, ordinary risks attendant with the use of its premises. It is further asserted that reasonable and adequate cleanup procedures existed.

B.
The duty of a store owner to protect customers from hazards created by foreign substances is one of reasonable care under the circumstances. Under our jurisprudence, after a plaintiff proves such a substance *1364 on the floor of a self-service convenience store caused him to fall and sustain injury, the burden shifts to the store owner to exculpate himself from a presumption of negligence. See Estes v. Kroger Co., 556 So.2d 240 (La.App. 2d Cir.1990), writ denied, 559 So.2d 1360 (La.1990); Morgan v. Stanley Stores, Inc., 550 So.2d 733 (La. App. 2d Cir.1989), and authorities there cited. Nevertheless, the store owner is not the insurer of the customer's safety and is not required to keep the floors in perfect condition. Davis v. Winningham Datsun-Volvo, Inc., 493 So.2d 719 (La.App. 2d Cir. 1986); Johnson v. Tayco Foods, 475 So.2d 65 (La.App. 2d Cir.1985), writ denied, 478 So.2d 149 (La.1985); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3d Cir.1986).
Of course, the present litigation has been instituted not against a merchant, but a municipality.[1] In my humble opinion, a governmental body should not be faced with the same high level of care regarding foreign substance hazards as is required of self-service supermarkets, convenience stores, and department stores. As observed in Webster, supra, the same theoretical and policy justifications do not exist. Although the dutyto use reasonable care to protect against unreasonable risks of harmcontinues, the degree of risk posed by a foreign object is less, and accordingly the standard of reasonableness for cleanup and inspection procedures changes. Id.
Furthermore, we have specifically declined to hold that a patron is owed the same standard of care when he is outdoors and can plainly see a premise hazard. Sellers, supra. So too, concerning accidents outside a store as opposed to those inside, a difference has been recognized in the respective duties of the owner and customer. See Dickson v. Wal-Mart Stores, Inc., 535 So.2d 800 (La.App. 2d Cir.1988); McCarger v. Babin Motors, Inc., 499 So.2d 1081 (La. App. 3d Cir.1986).
Simply put, under circumstances such as those sub judice, the standard of care required of a public body is not, or should not be, the same as that demanded of a merchant. Additionally, an individual's duty of observation in the outdoors is, or properly should be, heightened. Furthermore, the fact that a party has sustained an injury, after stepping on litter on a city street or sidewalk, should not engender a presumption of municipal negligence.[2]
A pedestrian has the duty to see that which should be seen and is bound to observe his intended course to see if his pathway is clear. Clark, supra; Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir.1985), writ denied, 481 So.2d 631 (La. 1986). Concerning the accident at hand, the trial court found that the foreign object involved, an unopened eight-inch candy bar, could easily have been observed with reasonable attention. Such a finding is not manifestly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Indeed, plaintiff admitted focusing his vision not on the steps, but upon the door a considerable distance away, as he ascended the sidewalk stairs.
Accordingly, even assuming arguendo inadequate maintenance procedures outside the complex, the easily observable object involved did not create an unreasonable risk of harm. Hence, it has not been shown that the city breached its duty to protect against such risks.

*1365 C.
I must respectfully dissent.
NOTES
[1] Had a merchant, not the City of Monroe, been the defendant, LSA-R.S. 9:2800.6 (as appropriately applying at the date of trial) would have been pertinent.
[2] My research reveals no case, in Louisiana or elsewhere, in which such a presumption has arisen against a municipality under comparable facts. Of course, when a defect is alleged as the precipitating factor of injury, recovery against a municipal corporation is dependent upon showing that (1) the city had actual or constructive notice of the defect, and (2) it failed to take corrective measures. McDade v. Town of Oak Grove, 545 So.2d 1276 (La.App. 2d Cir.1989); Clark v. Hartford Accident & Indemnity Co., 562 So.2d 50 (La.App. 3d Cir.1990); Reed v. Arthur, 556 So.2d 937 (La.App. 3d Cir.1990); Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir. 1988), writ denied, 530 So.2d 569 (La.1988). Plaintiff, of course, did not allege his accident to be caused by a defect, but by a foreign object, which can more appropriately be classified as litter.